FRANK T. LLOYD, Jr., PLAINTIFF-APPELLANT, v. ABRAM
M. VERMEULEN, DIRECTOR OF THE DIVISION OF
BUDGET AND ACCOUNTING AND STATE COMPTROL-
LER, DEPARTMENT OF THE TREASURY OF THE STATE
OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued September 5, 10, 1956—Decided September 24, 1956.

*Mr. Leon S. Milmed* argued the cause for the appellant (*Messrs. Milmed & Rosen,* attorneys).

*Mr. David D. Furman,* Deputy Attorney-General, argued the cause for the respondent (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney).

The opinion of the court was delivered by

JACOBS, J.　█　The Law Division in an opinion reported at 40 *N. J. Super.* 151 (1956), rejected the plaintiff's claim of tenure as a judge of the Superior Court; its action was unanimously sustained by the Appellate Division in an opinion reported at 40 *N. J. Super.* 301 (1956); thereafter the plaintiff appealed to this court as of right since the cause involved a question arising under the Constitution of the State. See *R. R.* 1:2–1(*a*); *Const.* 1947, *Art.* VI, *Sec.* V, *par.* 1.

The plaintiff held no judicial office whatever when our State Constitution was adopted at the general election held on November 4, 1947. However, on December 15, 1947 the Governor nominated him as a judge of the circuit court for the term prescribed by law, and on the same day the Senate confirmed the nomination. The term prescribed by statute for the office of circuit court judge was seven years (*R. S.* 2:5–4) but the 1947 Constitution contained a provision abolishing the circuit courts as of September 15, 1948 when its new Judicial Article took effect. See *Art.* XI, *Sec.* IV, *par.* 3; *Art.* XI, *Sec.* IV, *par.* 14. Although unaccompanied by any independent nomination and confirmation as a Superior Court judge the plaintiff received (in addition to his commission dated December 15, 1947 as a circuit judge) a commission dated December 15, 1947 as a judge of the Superior Court "for and during legal time prescribed in Paragraph 3, Section VI, Article VI of the State Constitution adopted November 4, 1947." Thereafter the plaintiff took his oath of office as a circuit judge and entered upon the performance of his judicial duties.

On June 28, 1948 the Governor nominated the plaintiff as a judge of the Superior Court for the term prescribed by *paragraph 3, Section VI, Article VI* of the 1947 *Constitution* and on the same day the Senate confirmed the nomination for such term. Under date of June 28, 1948 a commission was issued to the plaintiff appointing him as a judge of the Superior Court for the term "prescribed by *Paragraph 3, Section VI, Article VI* of the State Constitution adopted November 4, 1947." On September 13, 1948 the plaintiff took his oath of office as a judge of the Superior Court and under date of September 15, 1948 he (apparently along with all other Superior Court judges) received a commission to hold office "for and during legal time." From September 15, 1948 until his name was removed from the payroll on January 17, 1956 the plaintiff performed the duties of a Superior Court judge. However, he received no appointment or reappointment as a Superior Court judge after 1948 and does not qualify for tenure

under *Art.* VI, *Sec.* VI, *par.* 3 which provides that Superior Court judges shall have tenure upon reappointment after holding their offices for initial terms of seven years. Indeed, the plaintiff expressly disavows any contention under that provision but rests his tenure claim entirely on schedule provisions which were attached to the 1947 Constitution to facilitate the transition from the old to the new judicial branch of government. See 2 *Record of Proceedings, Const. Conv. of* 1947, *p.* 1195. In particular, he relies upon *Art.* XI, *Sec.* IV, *par.* 1 which reads as follows:

"Subsequent to the adoption of this Constitution the Governor shall nominate and appoint, with the advice and consent of the Senate, a Chief Justice and six Associate Justices of the new Supreme Court from among the persons then being the Chancellor, the Chief Justice and Associate Justices of the old Supreme Court, the Vice Chancellors and Circuit Court Judges. The remaining judicial officers enumerated and such Judges of the Court of Errors and Appeals as have been admitted to the practice of law in this State for at least ten years, and are in office on the adoption of the Constitution, shall constitute the Judges of the Superior Court. The Justices of the new Supreme Court and the Judges of the Superior Court so designated shall hold office each for the period of his term which remains unexpired at the time the Constitution is adopted; and if reappointed he shall hold office during good behavior. No Justice of the new Supreme Court or Judge of the Superior Court shall hold his office after attaining the age of seventy years, except, however, that such Justice or Judge may complete the period of his term which remains unexpired at the time the Constitution is adopted."

The defendant's position is that the quoted paragraph dealt only with incumbent judges who were in office at the time of the adoption of the Constitution on November 4, 1947 and had no relation whatever to new judges, such as the plaintiff, who were first appointed thereafter. Although he stresses the words actually embodied in the paragraph he properly places reliance on the intent of the framers of the Constitution and the people of the State who approved it, as fairly gathered from the constitutional language when read in the full light of its history, purpose and context. See *Richman v. Ligham,* 22 *N. J.* 40, 44 (1956); *Behnke v. New Jersey Highway Authority,* 13 *N. J.* 14, 24 (1953);

*John S. Westervelt's Sons v. Regency, Inc.,* 3 *N. J.* 472, 479 (1950) ; *State v. Murzda,* 116 *N. J. L.* 219, 222 (*E. & A.* 1936). *Cf. Alexander v. New Jersey Power & Light Co.,* 21 *N. J.* 373, 378 (1956) ; *Palkoski v. Garcia,* 19 *N. J.* 175, 181 (1955) ; *Caputo v. Best Foods,* 17 *N. J.* 259, 264 (1955) ; *In re Roche's Estate,* 16 *N. J.* 579, 587 (1954).

 The plaintiff's position is that he was a circuit court judge when the members of the new Supreme Court were first appointed on December 15, 1947; that he became a Superior Court judge on December 15, 1947 within the language of the first two sentences of *Art.* XI, *Sec.* IV, *par.* 1; and that upon receiving a second appointment on June 28, 1948 he acquired tenure within the language of the closing phrase in the third sentence. If his position were accepted it would afford tenure to him after an initial term of well under a year; and this despite the fact that the Constitution expressly prescribed an initial term of seven years which would be applicable generally to newly appointed Superior Court judges. The plaintiff urges that this anomalous result is compelled by a literal and grammatical reading of *Art.* XI, *Sec.* IV, *par.* 1. Without at all subscribing to his point of view we take the liberty of referring to Judge Learned Hand's well-known remark that "there is no surer way to misread any document than to read it literally." *Guiseppi v. Walling,* 144 *F.* 2d 608, 624, 155 *A. L. R.* 761 (2 *Cir.* 1944), affirmed *sub nom. Gemsco v. Walling,* 324 *U. S.* 244, 65 *S. Ct.* 605, 89 *L. Ed.* 921 (1945). *Cf. Waters v. Quimby,* 27 *N. J. L.* 296, 311 (*Sup. Ct.* 1859), affirmed 28 *N. J. L.* 533 (*E. & A.* 1859) :

"When the words of a statute are susceptible of two meanings, the one favorable, and the other hostile to its principal design, the former should prevail and control the construction. Where the words are clear, and the difficulty is made by critical exposition, that exposition should not be adopted in clear contravention of the scope and policy of the act. Few statutes would stand if tried by the strictest standards of logic, grammar, or rhetoric."

In *In re Roche's Estate, supra,* Justice Heher aptly remarked that the meaning of an enactment is not ruled by its strict

letter but rather "by the sense and meaning fairly deducible from the context," and in *Caputo v. Best Foods, supra,* he similarly noted that the lawgivers' intention "emerges from the spirit and policy of the statute rather than the literal sense of particular terms." *Cf. Giordano v. City Commission of City of Newark,* 2 *N. J.* 585, 594 (1949); *Glover v. Simmons Co.,* 17 *N. J.* 313, 319 (1955).

In construing constitutional and statutory provisions, this court has rightly recognized that, since words are inexact tools at best, resort may freely be had to the pertinent constitutional and legislative history for aid in ascertaining the true sense and meaning of the language used. See *Richman v. Ligham, supra; Deaney v. Linen Thread Co.,* 19 *N. J.* 578 (1955); *Note, "Extrinsic Aids to Statutory Interpretation—The New Jersey View,"* 8 *Rutgers L. Rev.* 486 (1954). *Cf. Frankfurter, "Some Reflections on the Reading of Statutes,"* 47 *Colum. L. Rev.* 527, 541 (1947); *Board of National Missions, etc. v. Neeld,* 9 *N. J.* 349, 358–362 (1952). The origins of *Art.* XI, *Sec.* IV, *par.* 1 are to be found in the 1942 report submitted by the Commission on Revision of the New Jersey Constitution which was headed by Robert C. Hendrickson. That report embodied a proposed constitution which provided that Superior Court judges shall hold office for a term of seven years and if reappointed shall thereafter hold office during good behavior. The schedule attached to the constitution set forth that immediately after its adoption the Governor shall appoint the new Supreme Court from the persons then holding the offices of "Chancellor, Chief Justice, justices of the Supreme Court, such judges of the Court of Errors and Appeals as are counsellors at law of ten years' standing, vice-chancellors and Circuit Court Judges." It also set forth that "the remaining judicial officers above enumerated and the judges of the courts of common pleas shall constitute the justices of the new Superior Court, each for the unexpired period of his original term" and "if reappointed thereafter, any such justice shall have tenure during good behavior." It is evident that the foregoing schedule provisions referred solely

to the incumbent judges as of the date of the adoption of the constitution and had no bearing whatever on judges first appointed thereafter. The intent was to confine the Governor in his designation of the new Supreme Court to the experienced pool of judges who actually held office at the adoption of the constitution and to permit the remainder of those judges to serve out the balance of their pre-existing terms and to acquire tenure upon reappointment. The overriding design was clear, was patently in the public interest, and was wholly fair to the incumbent judges and the people of the State generally. In due course the Legislature approved a new constitution for submission at the November 1944 general election; at the November 1944 general election the people rejected the proposed constitution but less than three years thereafter the 1947 convention was called to deal anew with the matter.

Although there were reasonable differences of opinion, the delegates at the 1947 convention rejected the federal view that judges should acquire tenure upon their first appointment. Instead, they provided in what is now *Art.* VI, *Sec.* VI, *par.* 3, that the justices of the Supreme Court and the judges of the Superior Court shall hold their offices for initial terms of seven years and upon reappointment shall hold their offices during good behavior. The problems incident to the transfer of the incumbent judges to the new system and their tenure were dealt with in schedule provisions comparable to those embodied in the 1942 Hendrickson report. The tentative draft of the Judicial Article of the 1947 Constitution was prepared by its Committee on the Judiciary, and it contained a schedule which followed closely the pattern of the earlier document. During the course of the convention the tentative draft was revised and the pertinent schedule provisions, as finally adopted, are now found in the four sentences embodied in *Art.* XI, *Sec.* IV, *par.* 1.

The first sentence provides that subsequent to the adoption of the Constitution the Governor shall appoint the new Supreme Court from the persons then being the Chancellor,

the Chief Justice and associate justices of the old Supreme Court, the vice-chancellors and the circuit court judges. The plaintiff points out that unlike the tentative draft this did not require the Governor to make his appointments to the new Supreme Court immediately upon adoption of the Constitution. Although that is true it does not in anywise alter the sense and meaning of the schedule provisions on the issue which is actually before us. During the hearings before the Judiciary Committee it was urged that since the Judicial Article was not to take effect for some time thereafter there was no reason for compelling the Governor to appoint the new Supreme Court justices immediately upon adoption of the Constitution. See 4 *Record of Proceedings, Const. Conv. of* 1947, *p.* 525. Apparently in response, the committee altered the language to provide that the Governor shall make his appointments subsequent to the adoption of the Constitution. Nowhere, however, is there to be found any suggestion that there was an intent to alter or open the class from which the appointments were to be made. We are satisfied that although the first sentence enabled the Governor to delay his appointments, it still required that he select his appointees from the persons then being (namely, at the adoption of the Constitution) the Chancellor, the Chief Justice and associate justices of the old Supreme Court, the vice-chancellors and the Circuit Court judges. The contrary construction advanced by the plaintiff would have enabled the Governor to make his original appointments to the new Supreme Court from newly selected judges who held no judicial offices at the time of the adoption of the Constitution on November 4, 1947. This would be in utter disregard of the thoughtful plan which was designed in the 1942 report and was carried forth into the 1947 Constitution. It is worthy of note that at the time the Constitution of 1947 was voted upon by the people it was generally understood that the members of the new Supreme Court would necessarily be selected from the incumbent members of the old Supreme Court, the Court of Chancery and the circuit court; acting on this understanding Governor Driscoll, on

October 31, 1947, appointed our present Chief Justice Arthur T. Vanderbilt as a circuit court judge in order that he might then become a member of the designated class of judges eligible for appointment to the new Supreme Court after the adoption of the Constitution on November 4, 1947. See *Newark Evening News,* October 31, 1947, *p.* 1; *Newark Evening News, November* 1, 1947, *pp.* 1, 4.

Our view that the schedule provisions in *Art.* XI, *Sec.* IV, *par.* 1 dealt exclusively with the incumbent judges who held their judicial offices at the adoption of the Constitution finds overwhelming support in the other three sentences. Thus the second sentence refers to the remaining judicial officers enumerated in the first sentence and to such Judges of the Court of Errors and Appeals as have been admitted to the practice of law in this State for at least ten years, "and are in office on the adoption of the Constitution." The plaintiff contends that, grammatically, the quoted phrase may apply only to the judges of the Court of Errors and Appeals; assuming that to be so, he suggests no reason whatever for differentiating those judges from all the others who then became members of the Superior Court. It seems to us that the delegates properly considered the reference to the remaining judges of the old Supreme Court, the Court of Chancery and the circuit court as embodying them as a class as of the adoption of the Constitution and that when they designated the judges of the Court of Errors and Appeals (not mentioned in the first sentence and therefore not eligible for appointment to the Supreme Court) as Superior Court judges they appropriately included the quoted phrase. The third sentence provides that the justices of the new Supreme Court and the judges of the Superior Court so designated shall hold office each for the period of his term "which remains unexpired at the time the Constitution is adopted" and if reappointed shall hold office during good behavior. This sentence would appear to obliterate any lingering doubts, for its terminology was well chosen to effectuate the general understanding that in *Art.* XI, *Sec.* IV, *par.* 1, the framers were dealing with the terms and

tenure of the incumbent judges (who held judicial offices at the adoption of the Constitution) and no others; indeed it seems to us that it is hardly susceptible of any other interpretation. The fourth and final sentence provides that no justice of the new Supreme Court or judge of the Superior Court shall hold his office after attaining the age of 70 years, except, however, that such justice or judge may complete "the period of his term which remains unexpired at the time the Constitution is adopted." Here, again, the framers adequately displayed that they were dealing with the incumbent judges who held judicial offices at the adoption of the Constitution.

The plaintiff points out that the official manuals prepared by the Department of State of New Jersey have, since 1949, listed him as having tenure and that the payroll certifications up to and including January 1956 regularly included his name; he contends that these and comparable items furnish support for his claim. We recognize fully that resort may be had to contemporaneous and practical constructions for whatever aid they may fairly afford in ascertaining the true sense and meaning of constitutional and statutory provisions. See *State Department of Civil Service v. Clark*, 15 *N. J.* 334, 341 (1954), where Justice Wachenfeld, in an opinion delivered for the entire court, said:

"The principle is well established by a wealth of authority that resort may be had to long usage, contemporaneous construction and practical interpretation in construing statutes, to ascertain the meaning of technical terms, to confirm a construction deduced from the language, to explain a doubtful phrase or where the meaning is obscurely expressed. *Suburban Electric Co. v. City of Elizabeth*, 59 *N. J. L.* 134 (*Sup. Ct.* 1896)."

See also *Harper v. New Jersey Mfrs. Cas. Ins. Co.*, 1 *N. J.* 93, 98 (1948); *Kravis v. Hock*, 137 *N. J. L.* 252, 255 (1948); *In re Hudson County*, 106 *N. J. L.* 62, 75 (*E. & A.* 1929). However, in the instant matter, the post-1948 items relied upon by the plaintiff are not sufficiently weighty to overturn the clear and soundly conceived constitutional plan

which originally was well understood and fairly expressed in the constitutional language itself and which we are now duty bound to effectuate sympathetically. When the plaintiff was first appointed as a circuit court judge on December 15, 1947 he did not automatically acquire status as a Superior Court judge since he was not an incumbent judge holding office at the adoption of the Constitution within the terms or contemplation of *Art. XI, Sec. IV, par.* 1. The commission as a judge of the Superior Court which was then issued to him had no legal force since he had received no appointment or confirmation as such; it is to be noted that the commission itself did not purport to be issued under *Art. XI, Sec. IV, par.* 1 but referred rather to *Art. VI, Sec. VI, par.* 3. When the Governor, on June 28, 1948, designated him as a judge of the Superior Court, the plaintiff received his first appointment to the Superior Court for an initial term of seven years under *Art. VI, Sec. VI, par.* 3; indeed the Governor's nomination, the Senate's confirmation, and the actual commission dated June 28, 1948 all expressly provided that the plaintiff's appointment was for the term prescribed in *Art. VI, Sec. VI, par.* 3 and made no reference to *Art. XI, Sec. IV, par.* 1; this is to be contrasted with the other appointments made on June 28, 1948 of judges who actually held judicial offices at the adoption of the Constitution and whose appointments were expressly stated to be "for the term prescribed by *Paragraph* 1, of *Section* IV, of *Article* XI." If the plaintiff had duly received a re-appointment for service after the expiration of his initial seven-year term he would, of course, have been entitled to tenure under *Art. VI, Sec. VI, par.* 3; not having received such reappointment his claim must fail.

Affirmed.

OLIPHANT and WACHENFELD, J. J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.