THOMAS CONNELLY FLANAGAN, PLAINTIFF-RESPONDENT, v. RICHARD FOSTER, DEFENDANT-APPELLANT.

and

THOMAS CONNELLY FLANAGAN, PLAINTIFF, v. ROBERT DANLEY AND LAURA YONKO, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted November 10, 1981—Decided December 23, 1981.

────────

Before Judges FRITZ, ARD and TRAUTWEIN.

*Vincent J. Pancari*, for appellant.

*Valore, McAllister, Aron, Westmoreland & Vesper*, for respondent (*Thomas J. Vesper* and *John M. Toscano* on the brief).

The opinion of the court was delivered by

FRITZ, P. J. A. D.

This appeal is from a jury verdict in an automobile negligence action. Defendant, the operator of an automobile in which plaintiff was riding when he was injured in the course of a one-car accident, urges as grounds for appeal that the trial judge erred in admitting evidence of medical expenses incurred by plaintiff; in not severing the trial of this action from the

theretofore consolidated trial of another automobile negligence action, at least with respect to matters requiring proof of medical expenses, and in denying defendant's motion for *remittitur* or, in the alternative, a new trial. We find no merit in these contentions and affirm.

The matter is complicated somewhat by the fact that the consolidated actions involved two different automobile accidents occurring a week apart, in each of which plaintiff was a passenger in an automobile being driven by another and in each of which the automobile in which plaintiff was riding was the only vehicle involved. Defendant Foster, appellant here, was the driver in the latter accident. It is of some moment that Foster was insured but Danley, the driver of the automobile involved in the first accident, was not. The Danley vehicle was registered in Pennsylvania and was not within the personal injury protection coverage (PIP) umbrella of *N.J.S.A.* 39:6A–4 and 10. Additionally, it is notable that plaintiff was not a resident in a household where there was PIP coverage and did not have PIP coverage of his own. The Unsatisfied Claim and Judgment Fund provided the defense for Danley and defendant Yonko.[1]

The action against Foster and the action against Danley were consolidated for trial.[2] Following this trial the jury found both Danley and Foster negligent with regard to their respective accidents, found that that negligence was a proximate cause of the accident and that plaintiff was not negligent. By way of written interrogatories they determined money damage attributable to each of the accidents and with respect to each, attributable to components of pain and suffering, medical expenses,

[1]Yonko was apparently the owner of the pickup truck being driven by Danley at the time of the accident.

[2]We are advised in respondent's brief that this was a consent order. This is not accurate. The order for consolidation shows a consent *as to form.*

loss of past income and loss of future income. Their determinations in these respects were as follows:

| | Danley | Foster |
|---|---|---|
| Pain and suffering. | $ 5,000 | $ 7,500 |
| Medical expenses. | 6,266 | 8,356[3] |
| Loss of past income. | 7,320 | 10,980 |
| Loss of future income. | 98,509 | 147,763[3] |

Foster moved for a new trial or, in the alternative, a *remittitur*. Neither relief was granted.

Foster appeals, asserting first that evidence of medical expenses should not have been admitted because of the specific exclusion directed by *N.J.S.A.* 39:6A–12. The difficulty with this simplistic approach in the rather extraordinary factual pattern of this case is that the substantial medical expenses were produced in large part by conditions related to both accidents. The first of these two accidents (the uninsured Danley), as is noted above, produced injuries resulting in or contributing to the necessity for medical expenses incurred following the second accident. To the extent that these expenses were attributable to the first accident they were not collectible PIP benefits and thus not subject to the exclusion of the statute.

Such a result does not offend the purposes of *N.J.S.A.* 39:6A–12. The objects of the statutory language, which language is characterized by Judge Cohen in *Rybeck v. Rybeck*, 141 *N.J.Super.* 481, 508 (Law Div.1976), dismissed on procedural grounds, 150 *N.J.Super.* 151 (App.Div.1977), certif. den. 75 *N.J.* 30 (1977) as "curious," would appear to be, as Judge Cohen also said, to

---

[3]The verdict figure against Foster was diminished in the judgment by elimination of the amount of the medical expense and by reducing the verdict by $5,200 as a collectible PIP wage loss benefit from the loss of future income verdict on the written interrogatory.

prevent double recoveries and "to silence trial witnesses on the subject of out-of-pocket loss to the extent that such loss is collectible or paid by a PIP carrier." *Ibid.* Those goals are not frustrated by the procedure here employed in light of the instructions to the jury (to which, it is notable, there was no objection, except that of plaintiff respecting mitigation) and the submission of carefully detailed written interrogatories to the jury. As a matter of fact, it seems to us that the procedure employed is rather a fine balancing of the proper interests of all parties.

In this same vein, counsel for Foster also asserts that while the Unsatisfied Claim and Judgment Fund law "does not specifically provide for the exclusion from evidence the amounts paid or collectible pursuant to *N.J.S.A.* 39:6–86.1 . . . there is no reason why that exclusion should not apply under the facts and circumstances of the case at bar." The obvious answer to that argument is that the expenses attributable to the Danley accident were not collectible under the "no fault" benefits of the Unsatisfied Claim and Judgment Fund law any more than they were under PIP: included among the limitations prerequisite to *N.J.S.A.* 39:6–86.1 benefits is the requirement that the damages arise "out of the ownership, maintenance, operation or use of an automobile, as defined in *P.L.*1972, c. 70 [§§ 39:6A–1 to 39:6A–18] *registered or principally garaged in this State.*" (Emphasis supplied). The Danley vehicle, registered in Pennsylvania, simply did not qualify. Because of our conviction that the procedure employed in this matter was designed to facilitate the proper interests of both parties and thus promote justice for all, we believe the second point urged by Foster, that the trial judge erred in failing to sever "for separate trial those matters which required proof of plaintiff's medical expenses," is without merit. If doubt as to identification justifies determination of liability in a single trial, *Schaefer v. Strelecki,* 107 *N.J.Super.* 7, 13 (App. Div.1969), then we are satisfied that we should not disturb the discretion exercised by a trial judge in consolidating cases where there is doubt respecting the responsibility for medical expenses

in a matter where the accidents are only one week apart. As was said in *Schaefer v. Strelecki, supra* at 13, the spirit of our modern practice and the requirements of substantial justice seem to demand such a consolidation. *Quagliato v. Bodner*, 115 *N.J.Super.* 133 (App.Div.1971).

Finally, Foster urges that the trial judge erred in denying his motion for a *remittitur* or, in the alternative, a new trial. The basis for our rejection of this argument is clearly stated in *Baxter v. Fairmont Food Co.*, 74 *N.J.* 588 (1977), where the following appears:

> The judgment of the initial factfinder then, whether it be a jury, as here, or a judge as in a non-jury case (*see Leimgruber v. Claridge Assoc.*, 73 *N.J.* 450, 455–56 (1977); *Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474, 483–84 (1974); *State v. Johnson*, 42 *N.J.* 146, 162 (1964); *National Institute for Rehab. Engineering v. Fenton*, 146 *N.J.Super.* 434, 436 (App.Div.1976); *Greenfield v. Dusseault*, 60 *N.J.Super.* 436, 444 (App.Div.), *aff'd o. b.*, 33 *N.J.* 78 (1960)) is entitled to very considerable respect. It should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice. The process of "weighing" the evidence is not to encourage the judge to "evaluate the evidence as would a jury to ascertain in whose favor the evidence preponderates" (*Kulbacki v. Sobchinsky*, 38 *N.J.* 435, 455 (1962) (Haneman, J., concurring) and on that basis to decide upon disruption of the jury's finding. "[T]he judge may not substitute his judgment for that of the jury merely because he would have reached the opposite conclusion; he is not a thirteenth and decisive juror." *Dolson v. Anastasia, supra*, 55 *N.J.* at 6 . Nevertheless, the process of evidence evaluation called "weighing" is not "a *pro forma* exercise, but calls for a high degree of conscientious effort and diligent scrutiny. The object is to correct clear error or mistake by the jury." *Id.* It is only upon the predicate of a determination that there has been a manifest miscarriage of justice, that corrective judicial action is warranted. [At 597–598 ]

In this matter on the motion for new trial, the trial judge expressly refused to substitute his judgment for that of the jury and, in considering the motion, correctly applied the proper standards set down by the cases. He determined on adequate findings that there was no miscarriage of justice under the law. Our careful examination of the record produces no reason to fault him with respect to either his findings or his conclusion.

Affirmed.