Counsel for plaintiff shall submit an order in accordance herewith within 10 days.

677 A.2d 819

PETROLINA CAMACHO, PLAINTIFF, v. STEVEN DIAZ AND UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANTS.

Superior Court of New Jersey
Law Division Passaic County

Decided February 16, 1996.

*Sander Perl* for plaintiff (*Goldstein, Ballen, O'Rourke & Wildstein,* attorneys).

*Edwin F. Gerecht, Jr.,* for defendant Unsatisfied Claim and Judgment Fund Board.

MINIMAN, J.S.C.

Plaintiff Petrolina Camacho ("Camacho"), a New Jersey resident, seeks to recover personal injury protection (PIP) benefits from the New Jersey Unsatisfied Claim and Judgment Fund (the Fund) pursuant to *N.J.S.A.* 39:6–86.1 for injuries she sustained as a pedestrian injured in a New Jersey accident by an uninsured motorcycle registered in the State of New York. As the Fund correctly contends in this motion for summary judgment, an injured person is not entitled to recover PIP benefits from the Fund under *N.J.S.A.* 39:6–86.1, for injuries caused by uninsured motorcycles registered and garaged outside New Jersey and plaintiff's claims for PIP benefits from the Fund are accordingly dismissed.

The facts are undisputed. On August 31, 1993, Camacho was walking on Main Street in Paterson, New Jersey, when she was struck by a motorcycle owned and operated by defendant Steven Diaz (Diaz). Camacho suffered bodily injuries which caused her to incur approximately $30,000 in medical expenses. At the time

of the accident, the motorcycle owned by Diaz was registered and garaged in the State of New York. The motorcycle at one time had been insured under a New York policy issued by the New York Central Mutual Fire Insurance Company (Central). However, on July 25, 1993, Central cancelled the insurance policy issued to Diaz due to non-payment of premium. When Diaz struck Camacho on August 31, 1993, his motorcycle remained uninsured. Camacho filed a notice of intention to make claim with the Fund on September 30, 1993.

On March 25, 1994, Camacho filed this action against Diaz and the Fund for recovery of medical expenses and noneconomic losses. On January 30, 1995, default was entered against Diaz, although no judgment by default has yet been entered. On May 18, 1995, an arbitrator found that Camacho's medical expenses and noneconomic losses which resulted from the accident totalled $150,000 ($30,000 in medical expenses and $120,000 in noneconomic losses). The arbitrator also found that both Camacho and Diaz were negligent and that 90% of their combined negligence was attributable to Diaz. The arbitrator therefore awarded $135,000 to Camacho. A trial de novo was filed by the Fund on June 7, 1995.

On September 28, 1995, Camacho filed this summary judgment motion seeking a declaration that she is eligible to collect PIP benefits from the Fund. Camacho's claims against the Fund arise out of the Unsatisfied Claim and Judgment Fund Law, *N.J.S.A.* 39:6–61 to –91. This motion requires the court to determine the meaning of *N.J.S.A.* 39:6–86.1. That statute provides in pertinent part as follows:

> When any person qualified to receive payments under the provisions of the "Unsatisfied Claim and Judgment Fund Law" suffers bodily injury or death as a pedestrian ... caused by a motor vehicle, including an automobile ... and a motorcycle, or by an object propelled therefrom, or arising out of an accident while occupying, entering into, alighting from, or using an automobile, registered or principally garaged in this State for which personal injury protection benefits under the "New Jersey Automobile Reparation Reform Act," P.L.1972, c. 70 (C. 39:6A–1 et seq.), or section 19 of P.L.1983, c. 362 (C. 17:28–1.3), would be payable to such person if personal injury protection coverage were in force and the

damages resulting from such accident or death are not satisfied due to the personal injury protection coverage not being in effect . . ., then in such event the Unsatisfied Claim and Judgment Fund shall provide . . . the following benefits:

a.  Medical expense benefits.  Payment of all reasonable medical expense benefits in an amount not exceeding $250,000 per person per accident. . . .

[*N.J.S.A.* 39:6–86.1.]

The issue to be determined by this court is whether "registered or principally garaged in this State" limits the eligibility of a pedestrian to recover PIP benefits from the Fund.

Camacho correctly points out that *N.J.S.A.* 39:6–86.1 creates two categories of claimants:  (1) pedestrians injured or killed by motor vehicles (pedestrians) and (2) persons injured or killed while occupying, entering into, alighting from, or using automobiles (passengers).  Drawing on this distinction, Camacho argues that the phrase "registered or principally garaged in this State" only applies to passengers and that pedestrians can secure PIP benefits from the Fund irrespective of the state in which the injuring motor vehicle was registered or principally garaged.  In other words, Camacho construes the section as though it had been drafted as follows:

When any person qualified to receive payments under the provisions of the "Unsatisfied Claim and Judgment Fund Law" suffers bodily injury or death

a) as a pedestrian, caused by a motor vehicle, including an automobile and a motorcycle, or by an object propelled therefrom, or

b) arising out of an accident while occupying, entering into, alighting from, or using an automobile, registered or principally garaged in this State

for which PIP benefits would be payable to such person if PIP coverage were in force and the damages resulting from such accident or death are not satisfied due to the PIP coverage not being in effect then in such event the Fund shall provide the following benefits. . . .

The Fund, on the other hand, contends that "registered or principally garaged in this State" applies to both classes of claimants;  that all claims for PIP benefits from the Fund under *N.J.S.A.* 39:6–86.1 are limited to claims based on injuries caused by uninsured motor vehicles "registered or principally garaged in this State."  In other words, the Fund construes the section as though it had been drafted as follows:

> When any person qualified to receive payments under the provisions of the "Unsatisfied Claim and Judgment Fund Law" suffers bodily injury or death
>
>> a) as a pedestrian, caused by a motor vehicle, including an automobile and a motorcycle, or by an object propelled by such motor vehicle, or
>>
>> b) arising out of an accident while occupying, entering into, alighting from, or using an automobile,
>
> registered or principally garaged in this State for which PIP benefits would be payable to such person if PIP coverage were in force and the damages resulting from such accident or death are not satisfied due to the PIP coverage not being in effect then in such event the Fund shall provide the following benefits....

The competing interpretations produce vastly different results.[1]

A grammatical construction of *N.J.S.A.* 39:6–86.1 compels the conclusion that pedestrians and passengers are only entitled to recover PIP benefits from the Fund if the injuring motor vehicle was "registered or principally garaged" in New Jersey. "Where a comma is used to set a modifying phrase off from previous phrases, the modifying phrase applies to all the previous phrases, not just the immediately preceding phrase." *Gudgeon v. County of Ocean,* 135 *N.J.Super.* 13, 17, 342 *A.2d* 553 (App.Div.1975) (citations omitted). As the Appellate Division there acknowledged, "[t]his is the converse of the general rule that qualifying

---

[1] If the court were to accept the Fund's argument that a pedestrian can only recover PIP benefits from the Fund when the pedestrian is injured by a motor vehicle which is "registered or principally garaged in this State," Camacho's only recourse would be to secure final judgment by default against Diaz for the full amount of her injuries, both economic and noneconomic, and then, if she cannot recover the judgment from Diaz, apply for payment of the judgment from the Fund pursuant to *N.J.S.A.* 39:6–70. Assuming that Diaz is judgment-proof, under the Fund's interpretation of the statute, Camacho would only be able to recover a total of $15,000. *N.J.S.A.* 39:6–69(a). While Camacho's recovery would certainly be less than under her interpretation, she would not be left without a remedy. On the other hand, if the court were to accept Camacho's argument, she would recover from the Fund all of her past and future medical expenses up to a total of $250,000. *N.J.S.A.* 39:6–86.1. In addition, she would be able to recover up to $15,000 for her noneconomic losses pursuant to *N.J.S.A.* 39:6–69(a). Although her recovery would not approach the arbitrator's estimate of the value of her injuries—$150,000—at a minimum her recovery would be $45,000—at least three times more than her recovery would be under the Fund's interpretation of the statute.

words refer solely to the immediately preceding word." *Id.* at 17 n. 1, 342 *A.*2d 553 (citations omitted).

In *N.J.S.A.* 39:6–86.1 the phrase "registered or principally garaged in this State" is immediately preceded by a comma which sets it off from the two previous phrases. Contrary to Camacho's argument, the phrase "registered or principally garaged in this State", therefore, "applies to all the previous phrases, not just the immediately preceding phrase." *Gudgeon, supra,* 135 *N.J.Super.* at 17, 342 *A.*2d 553. Accordingly, the grammatical construction of *N.J.S.A.* 39:6–86.1 compels the conclusion that Camacho is not entitled to recover PIP benefits from the Fund, because the motorcycle owned by Diaz was not "registered or principally garaged in this State." This grammatical construction is consistent with the plain meaning of the statutory section as a whole and is also consistent with the legislative history and the legislative intent which can be gleaned therefrom.

" 'The meaning of a statute must . . . be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms.' " *Sheeran v. Nationwide Mut. Ins. Co., Inc.,* 80 *N.J.* 548, 556, 404 *A.*2d 625 (1979) (quoting *Caminetti v. United States,* 242 *U.S.* 470, 485, 37 *S.Ct.* 192, 194, 61 *L.Ed.2d* 442, 452 (1917) (citations omitted). Here, *N.J.S.A.* 39:6–86.1 is plain when the modifying phrase and incorporated statutory provisions are construed together. The concluding phrase of the statute provides that the injury or death must be one

> for which personal injury protection benefits *under the "New Jersey Automobile Reparation Reform Act," P.L.1972, c. 70 (C. 39:6A–1 et seq.), or section 19 of P.L.1983, c. 362 (C. 17:28–1.3),* would be payable to such person if personal injury protection coverage were in force and the damages resulting from such accident or death are not satisfied due to the personal injury protection coverage not being in effect. . . .

> [*N.J.S.A.* 39:6–86.1 (emphasis added).]

Both incorporated statutory provisions require PIP coverage only with respect to motor vehicles, including automobiles and motorcycles, registered or principally garaged in New Jersey.

The New Jersey Automobile Reparation Reform Act requires inclusion of PIP coverage for pedestrians in policies covering automobiles which are registered or principally garaged in New Jersey. *N.J.S.A.* 39:6A–2 to –4. The New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984 also requires inclusion of PIP coverage for pedestrians in policies covering motor vehicles (other than automobiles) which are registered or principally garaged in New Jersey. *N.J.S.A.* 17:28–1.3, read together with *N.J.S.A.* 17:28–1.1(a).[2] Thus, even if the phrase "registered or principally garaged in this State" applied only to automobiles, the concluding phrase which modifies "bodily injury or death" would still limit pedestrians entitled to PIP benefits from the Fund to those injured by motor vehicles registered or principally garaged in this State, because only such motor vehicles are required by *N.J.S.A.* 17:28–1.3 to have pedestrian PIP coverage in force. Personal injury protection benefits *under the New Jersey Automobile Reparation Reform Act* are simply not payable to pedestrians injured by motor vehicles, including motorcycles, which are not registered or principally garaged in New Jersey. The meaning of the modifying phrase "registered or principally garaged in this State" thus becomes plain when that phrase is read together with *N.J.S.A.* 39:6–86.1 and its incorporated statutory provisions.

■ Even were some ambiguity to be found in the statutory language, the same conclusion would nonetheless be compelled by examining the legislative history to ascertain the legislative intent and the true meaning of the statute. Where the wording of a statute is susceptible to more than one reasonable interpretation,

---

[2] Of course, New Jersey has no jurisdiction over foreign motor vehicles sufficient to require their owners to provide PIP coverage for pedestrians injured in accidents in New Jersey. The Legislature has only required inclusion of PIP coverage for such pedestrians where the insurer is authorized to do business in New Jersey. *N.J.S.A.* 17:28–1.4. This latter statute has *not* been incorporated by reference in *N.J.S.A.* 39:6–86.1, an exclusion which supports construing the Fund Law as providing benefits only to pedestrians injured by motor vehicles registered or principally garaged in New Jersey.

the court must construe the statute to be consistent with the underlying purposes for which the statute was enacted and the policies which it was intended to advance. *Lloyd v. Vermeulen,* 22 *N.J.* 200, 205–06, 125 *A.*2d 393 (1956).

When the Appellate Division in *Flanagan v. Foster,* 182 *N.J.Super.* 282, 440 *A.*2d 1147 (App.Div.1981), *certif. denied,* 89 *N.J.* 431, 446 *A.*2d 156 (1982), held that *N.J.S.A.* 39:6–86.1 barred an automobile passenger from recovering PIP benefits from the Fund because the host vehicle was registered in Pennsylvania, the statute differed from its present formulation. In 1981 the introductory paragraph of *N.J.S.A.* 39:6–86.1 read as follows:

> When any person qualified to receive payments under the provisions of the "Unsatisfied Claim and Judgment Fund Law" suffers bodily injury or death arising out of the ownership, maintenance, operation or use of an automobile, as defined in P.L.1972, c. 70, registered or principally garaged in this State for which personal injury protection benefits under the New Jersey Automobile Reparation Reform Act would be payable to such person if personal injury protection coverage were in force and the damages resulting from such automobile accident or death are not satisfied due to the personal injury protection coverage not being in effect with respect to such automobile accident, then in such event the Unsatisfied Claim and Judgment Fund shall provide, under the following conditions, the following benefits....

> [*N.J.S.A.* 39:6–86.1 (1972).]

Thus, when *Flanagan* was decided only persons injured by automobiles "registered or principally garaged in this State" were entitled to PIP coverage. Persons injured by other motor vehicles were not entitled to PIP coverage from the Fund at all. The status of the injured person as a pedestrian or as a person using an automobile was irrelevant.

*N.J.S.A.* 39:6–86.1 was amended by the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984. *L.*1983, *c.* 362. That act deleted the words "arising out of the ownership, maintenance, operation or use of an automobile" and substituted the following underscored language, leaving in place the words "registered or principally garaged in this State":

> When any person qualified to receive payments under the provisions of the "Unsatisfied Claim and Judgment Fund Law" suffers bodily injury or death *through being struck, as a pedestrian, as defined in section 2 of P.L.1972, c. 70 (C.*

*39:6A–2), by a motor vehicle, including an automobile as defined in section 2 of P.L.1972, c. 70 (C. 39:6A–2), and a motorcycle, or by an object propelled therefrom or arising out of an accident while occupying, entering into, alighting from, or using an automobile,* registered or principally garaged in this State for which personal injury protection benefits under the New Jersey Automobile Reparation Reform Act, *P.L.1972, c. 70 (C. 39:6A–1 et seq.), or section 19 of this 1983 amendatory and supplementary act,* would be payable to such person if personal injury protection coverage were in force and the damages resulting from such accident or death are not satisfied due to the personal injury protection coverage not being in effect with respect to such accident, then in such event the Unsatisfied Claim and Judgment Fund shall provide, under the following conditions, the following benefits....

[*N.J.S.A.* 39:6–86.1 (1983).]

Section 19 of the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984, *L.*1983, *c.* 362, required the inclusion of pedestrian PIP coverage in every liability insurance policy issued in New Jersey on a motor vehicle other than an automobile. *N.J.S.A.* 17:28–1.3. Section 7 of that act also amended section 4 of the New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A–4. *See, L.*1983, *c.* 362, § 7.

Prior to the 1983 amendment, personal injury protection benefits under an automobile liability policy were available "to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident involving an automobile." [3] *N.J.S.A.* 39:6A–4 (1972). After the amendment, personal injury protection benefits were only available "to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian, being struck by an automobile or by an object propelled by or from an automobile." *N.J.S.A.* 39:6A–4 (1983).

The amendment to *N.J.S.A.* 39:6A–4 was intended to overrule *Hoglin v. Nationwide Mutual Ins. Co.,* 144 *N.J.Super.* 475, 366

---

[3] Personal injury protection benefits were also available "to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile." *N.J.S.A.* 39:6A–4 (1972).

A.2d 345 (App.Div.1976), which held that a motorcycle rider who was injured in an accident "involving" an automobile could recover PIP benefits from the rider's automobile insurance policy. *See,* State of New Jersey Legislative Study Commission, Report to the Legislature, *No–Fault Automobile Insurance Reform in New Jersey,* at 40–43 (December 1977) (No–Fault Report). By limiting named insureds and family members to recovery of PIP benefits for bodily injury resulting from an accident *while occupying, entering into, alighting from or using an automobile, or as a pedestrian, being struck by an automobile or by an object propelled by or from an automobile,* the result reached in *Hoglin* would be precluded. No–Fault Report at 46.

Likewise, the 1983 amendment to *N.J.S.A.* 39:6–86.1 was intended to mirror the amendment to *N.J.S.A.* 39:6A–4 and preclude motorcycle riders from securing PIP benefits from the Fund. While there is no direct evidence of legislative intent, the concepts and language employed in amending the Fund Law and the No–Fault Law in this regard were virtually identical. PIP benefits were limited (1) to pedestrians and (2) to persons occupying, entering into, alighting from or using an automobile. The Supreme Court has had occasion to note that the PIP benefit eligibility requirements of the No–Fault Law and the Fund Law track each other in "virtually all respects." *UCJF v. New Jersey Mfrs. Ins. Co.,* 138 *N.J.* 185, 189, 649 *A.2d* 1243 (1994). Accordingly, the 1983 amendment to *N.J.S.A.* 39:6–86.1 did not create one category of claimants for pedestrians free of the requirement that the injuring motor vehicle be registered or principally garaged in New Jersey and another category of claimants for passengers in automobiles so registered or garaged. Rather, it merely precluded the recovery of PIP benefits from the Fund by motorcyclists who formerly were eligible for PIP benefits if they suffered bodily injury or death "arising out of the ownership, maintenance, operation or use of an automobile." *N.J.S.A.* 39:6–86.1. *Accord, Roush v. Suarez,* No. A–3082–86T8 (App.Div., March 9, 1988) (per curiam).

It is true, as Camacho urges, that the Fund was created " 'to provide a measure of relief to persons who sustain losses or injury inflicted by financially-irresponsible or unidentified operators of motor vehicles, where such persons would otherwise be remediless.'" *UCJF v. New Jersey Mfrs. Ins. Co., supra,* 138 *N.J.* at 189, 649 *A.*2d 1243. (quoting *Douglass v. Harris,* 35 *N.J.* 270, 279, 173 *A.*2d 1 (1961)). "[T]he central purpose [of the Fund is] to provide the kind of protection a liability insurance policy would provide." *Lascari v. Iannaci,* 56 *N.J.* 317, 320, 266 *A.*2d 299 (1970). "The statute is to be liberally construed to advance the remedy, due regard being had to the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy." *Giles v. Gassert,* 23 *N.J.* 22, 34, 127 *A.*2d 161 (1956).

These basic principles, however, do not permit this court to rewrite the Fund Law to provide the PIP benefits Camacho seeks. It is clear from the portions of the Fund Law which provide PIP benefits that the Fund is only to provide the kind of protection a liability insurance policy *issued in New Jersey* would provide. *See, N.J.S.A.* 17:28–1.3 and *N.J.S.A.* 39:6A–4. The Legislature has clearly chosen to limit the recovery of PIP benefits from the Fund to claimants injured by motor vehicles "registered or principally garaged in this State." By doing so, persons injured by out-of-state uninsured motor vehicles are in no better or worse position than persons injured by out-of-state motor vehicles insured by a minimal policy which provides no PIP benefits. This is hardly an anomalous result. Camacho's claims for personal injury protection benefits are hereby dismissed.