683 P.2d 315

The STATE of Arizona, Appellee,

v.

Robert Paul SWARTZ, Appellant.

No. 2 CA–CR 3094–3.

Court of Appeals of Arizona, Division 2.

April 20, 1984.

Review Granted June 19, 1984.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Wallace R. Hoggatt, Tucson, for appellant.

## OPINION

HATHAWAY, Judge.

Appellant was convicted of two counts of theft of property valued in excess of $100, a class four felony, and sentenced to the presumptive term of six years' imprisonment. He was also sentenced to two additional years in prison pursuant to A.R.S. § 13–604(M) for committing these felonies while on post-conviction release for another crime, bringing appellant's total sentence to eight years' imprisonment.

Appellant opened a business checking account with the First Interstate Bank in October 1981. The initial deposit was $50. The account was open until April 22, 1982, during which time many deposits were made and checks written on the account. A review of the evidence demonstrates that appellant maintained a positive balance in

his account at the time the account statements were issued for the months of October, November and February. The December 1981 account statement revealed a negative balance of $320.96. The January statement indicated a negative balance of $45.18. The bank apparently paid the overdrafts written by appellant, charging him a fee for the extra processing involved, but did not move to close the account until April 22, 1982. At no time was a so-called bank guarantee card issued for this account.

On March 28, 1982, during a temporary post-conviction release in another case, appellant wrote three checks. At the time, his bank balance was $5.49. One check was made payable to J.C. Penney's for $252.27, for which appellant received three suits. The other two checks were made payable to Montgomery Ward in the amount of $106 and $85.23, respectively, for which appellant received three suits and several shirts. At no time between the date the checks were written and the date the account was closed did appellant attempt to deposit sufficient funds in his account to cover the checks. Neither Penney's nor Montgomery Ward ever collected the funds represented by the checks. Appellant was indicted for two counts of theft over $100.

■ Appellant first challenges the trial judge's refusal to grant a mistrial when the prosecutor argued:

"The second thing Mr. Roylston said was we are not going to deny that he wrote those checks. You can't deny that he wrote those checks. We have all this evidence that he wrote the checks. He can't get in front of you and say that. You would never believe anything else that he said. They have to admit to you that they wrote all the checks.

I am going to finish up here with a few comments. First, there is no evidence of a mistake. The evidence comes from the witness stand and from the exhibits that are in evidence."

Appellant made his motion for mistrial after the jury left the courtroom for delibera-

tion and was therefore untimely. Moreover, although the syntax and the argument is garbled, it is plainly directed at defense counsel's argument and does not point the finger at appellant's failure to testify. *State v. Moreno*, 26 Ariz.App. 178, 547 P.2d 30 (1976); *State v. Salazar*, 27 Ariz.App. 620, 557 P.2d 552 (1976).

■ Appellant next challenges the verdict itself, contending that there was insufficient evidence from which a jury could find that appellant obtained property in return for the bad checks, that the property allegedly received exceeded $100 in value and that appellant had the requisite intent to commit the crime.

The state offered testimony from the Ward's and Penney's employees in charge of investigating and collecting bad checks regarding the merchandise appellant received. Both witnesses testified that information written on the checks by the sales clerks assisted them in tracking the property given to appellant in exchange for the checks. At Ward's a transaction number on the check referred to a sales receipt which, the witness testified, indicated that appellant received two suits and several shirts in exchange for the check.

Appellant argues that this evidence was insufficient to establish that he received property and that the state was obligated to introduce the sales receipts or the items of clothing into evidence. We disagree. The signature on each check was identified as belonging to appellant by expert testimony. The checks were drawn on appellant's account, and circumstantial evidence established that the author of each check received goods in exchange for each check. The parties stipulated that, as to the goods purchased at Ward's, the mark-up of those goods was 32%, permitting the reasonable inference that the goods received from Ward's were worth more than $100.

In addition, uncontradicted testimony established that appellant received monthly statements regarding his account balance and that, at the time appellant wrote the checks in question, he had almost no money

to cover them. Circumstantial evidence in this case provided the jury sufficient evidence from which to find appellant guilty of theft. *State v. Tison*, 129 Ariz. 546, 633 P.2d 355 (1981); *State v. Edgar*, 126 Ariz. 206, 613 P.2d 1262 (1980).

█ The state also met its burden regarding the value of the property received. The purchase price for the items was established by introduction of the checks reflecting the amount paid and by the testimony of the stores' investigators. This is sufficient evidence of the fair market value of the merchandise sold. *State v. Sorrell*, 95 Ariz. 220, 388 P.2d 429 (1964); see *State v. Jones*, 104 Ariz. 14, 448 P.2d 70 (1968).

█ Appellant next argues that the trial judge erred when he failed to instruct the jury regarding the determination of value. Since he never properly objected to the lack of such an instruction, the objection is waived unless there is fundamental error. Rule 21.3(c), Arizona Rules of Criminal Procedure, 17 A.R.S.; *State v. Bravo*, 131 Ariz. 168, 639 P.2d 358 (App.1981). We find no fundamental error here for two reasons. First, there appears to be little question arising from the record that the value of the goods taken exceeded $100 in both instances. Even without considering the mark-up on the purchases from Montgomery Ward, the $100 threshhold was established. Second, the dollar limits separating the various theft offenses as enunciated in A.R.S. § 13–1802(C) exist only to determine the level of punishment and are not part of the elements of the crime. *State v. Brokaw*, 134 Ariz. 532, 658 P.2d 185 (App.1982). Since there was no rational path by which the jury could have concluded that the goods were valued at less than $100, the failure to instruct the jury regarding value was not fundamental error.

█ Appellant next urges us to hold that a motion for mistrial ought to have been granted when a Tucson police detective testified that his investigation of the bad checks included two unsuccessful attempts to get the store sales clerks to identify appellant from a photo line-up. The testimony served no purpose whatsoever in this case given the outcome of the investigation. However, the mistrial was properly denied because the photos were not referred to as "mug shots," there was no reference to appellant's prior criminal record and it was reasonably inferrable that the source of appellant's photo was other than police records. *State v. Bruni*, 129 Ariz. 312, 630 P.2d 1044 (App.1981).

█ Appellant contends that his sentence was improperly enhanced by a prior conviction still pending on appeal. Convictions are a verity until set aside, and the use of prior convictions pending on appeal for punishment enhancement in another case is permissible. *State v. Court of Appeals, Division One*, 103 Ariz. 315, 441 P.2d 544 (1968).

█ Finally, appellant contests the addition of two years' imprisonment to his sentence pursuant to A.R.S. § 13–604(M) because he claims he was not released "on bail or on his own recognizance" as the statute requires and because § 13–604(M) applies only to offenses committed while released before conviction in the other case. He maintains that § 13–604.01(B) is the applicable statute here, but that it was adopted after the crimes in this case were committed.

The jury in this case found that appellant "committed the offenses charged in the above-numbered indictment while he was released from custody in cause number CR–06461." The issue is whether the finding satisfies the terms of A.R.S. § 13–604(M). Initially, we note that appellant failed to object to the instructions given to the jury on this matter or to the form of the verdict. Such failure waives any right to appeal on this issue. Rule 21.3(c), Arizona Rules of Criminal Procedure, 17 A.R.S.

█ The substantive question of whether appellant was released on bail or on his own recognizance when he committed the present crimes remains. In the first case, CR–06461, appellant pleaded for several days on release before commencement of

his sentence to attend to personal business. The trial court presumably made a finding pursuant to Rule 7.2(b), although no specific record exists, and released appellant for four days. The court's only statement was that appellant was to "turn himself in to the Pima County Jail on March 29, 1982 ...." Appellant now wants us to hold that the trial court's procedural error when it granted the temporary leniency precludes the trial court from enhancing his sentence for felonies committed during this release period. We refuse to do that.

The only evidence, uncontroverted by appellant, was that he was released after the conviction in the first case on his own recognizance. Thus, the requirements of § 13–604(M) have been met.

We also reject the argument that § 13–604.01, rather than § 13–604(M) is the applicable statute. Appellant was never released from confinement, within the meaning of § 13–604.01(B), because his confinement had not yet begun.

Affirmed.

BIRDSALL, C.J., and HOWARD, J., concur.