THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
ANTHONY PROVENZANO, DEFENDANT-RESPONDENT.

Argued March 6, 1961—Decided March 20, 1961.

*Mr. William A. O'Brien,* Assistant Prosecutor, argued the cause for appellant (*Mr. Lawrence A. Whipple,* Hudson County Prosecutor, attorney).

*Mr. Maurice M. Krivit* argued the cause for defendant-respondent (*Mr. Clive S. Cummis,* on the brief).

The opinion was delivered

PER CURIAM. Defendant was indicted for violation of *N. J. S.* 2A:93–7 which reads:

"Any person who gives, offers or promises any money, real estate, service or thing of value to any duly *appointed* representative of a labor organization, with intent to influence him in respect to any of his acts, decisions or other duties as such representative, or to induce him to prevent or cause a strike by the employees of any person, or any such representative who accepts or agrees to accept the same for any such purpose, is guilty of a misdemeanor." (Emphasis added)

The indictment alleged that defendant was "a duly appointed representative" of teamster Local No. 560. Defendant moved to dismiss the indictment on the ground that although on the day of the alleged offense he was a representative, *i. e.,* business agent, yet he acquired the post by "election" and hence was not an "appointed" representative within the language of the statute. The trial court granted the motion. We certified the State's appeal before the Appellate Division acted upon it.

The statute denounces bribery in labor-management matters. The Legislature used the word "representative" to embrace all who act for a labor organization. Defendant's argument runs that although the Legislature used a word of such wide sweep, yet it intended to cut it down by the adjective "appointed," and indeed to make the criminality of a bribe depend upon the method whereby the represen-

tative status was established. Counsel was unable to suggest any reason why a rational legislator would want to draw so irrelevant a line, and we too are unable to think of one.

The word "appoint" means "designate," "choose," "select." 6 *C. J. S. Appoint p.* 87. Defendant refers to public offices and contends that with respect to them a distinction is drawn between "appoint" and "elect." Even there, however, "appoint" may well include any method of selection whether it be election by the voters or another technique. *McPherson v. Blacker,* 146 *U. S.* 1, 27, 13 *S. Ct.* 3, 36 *L. Ed.* 869, 874 (1892); *Reid v. Gorsuch,* 67 *N. J. L.* 396 (*Sup. Ct.* 1902); *In re Opinion of the Justices,* 118 *Me.* 552, 107 *A.* 705, 5 *A. L. R.* 1407 (*Sup. Jud. Ct.* 1919).

At any rate, there is no basis for the assumption upon which defendant's argument depends, *i. e.,* that the usage of "appoint" with respect to public office is relevant here. The criminal statute deals with private organizations. Whereas in the case of public posts there are constitutional and statutory provisions dealing with "appointment" and "election" to office, thus inviting the question whether in a given measure the Legislature intended "appointed" to include an "elected" officer, we do not have a statutory scheme for the selection of officers and other representatives of labor organizations and hence there is no existing statutory frame of reference to which we may look to find a purpose here to include some representatives and to exclude others. We gather from the constitution and by-laws of the local, furnished to us at our request, that the local was and is "an unincorporated labor union." Whatever the nature of this local, the significant fact is that the Legislature has not fashioned a mandatory plan for the creation of labor organizations and for the selection of its representatives, and thus the word "appoint" cannot be measured against other legislative usage in this area.

Hence to accept defendant's argument would be to find the Legislature intended the application of the criminal statute to depend upon the mode of selection which each

union may choose to adopt and thus, in net effect, to delegate to each organization the policy question whether its representatives and persons dealing with them shall be within or beyond the pale of the criminal law. So to hold would . be to attribute sheer inanity to the Legislature, to say nothing of the constitutional questions which a statute of that character would suggest. The absurdity is revealed by the organizational structure of this very local. Under the undated "By-laws" submitted to us with the notation "old," the president, vice president, recording secretary, secretary-treasurer, three trustees constituting the executive board, and the business agents, were all to be elected by the membership, but the executive board could "appoint" officers for the unexpired term if there be a vacancy. Hence the protection of the public welfare would depend upon the fortuitous circumstance whether the offending officer had been elected or had been appointed to fill a vacancy. And, under the "Constitution and By-laws" adopted in 1960 after the offense here charged, business representatives are not "elected" but rather the president is authorizd "to appoint" them with the consent of the executive board. The foregoing suffices to reveal the impact that an organizational pattern, privately determined, would have upon the public policy of the State under the unique interpretation of the statute which prevailed in the trial court.

■■ It is perfectly plain, as we have said, that in using the word "representative" the Legislature employed a sweeping term to embrace all who represent a labor organization whether they be officers or lesser agents. In providing that the representative be "duly appointed" the Legislature meant only that the representative be in fact designated as such by the labor organization. We repeat that "When the words of a statute are susceptible of two meanings, the one favorable, and the other hostile to its principal design, the former should prevail and control the construction." *Lloyd v. Vermeulen,* 22 *N. J.* 200, 205 (1956).

 The goal of the interpretative process is the intent of the Legislature. It is axiomatic that a statute will not be construed to lead to absurd results. All rules of construction are subordinate to that obvious proposition. The rule that a penal statute should be strictly construed does not mean that a ridiculous result shall be reached because some ingenious path may be found to that end. Rather it means that a statute shall not be extended by tenuous interpretation beyond the fair meaning of its terms lest it be applied to persons or conduct beyond the contemplation of the Legislature. In part that rule also is designed to avoid surprise to the citizen who conscientiously seeks to stay within the law. As to this, it could hardly be supposed that any officer or business agent, or a person dealing with him, decided to engage in bribery after carefully reading the statute to be inapplicable because the status of the union's representative was the product of an election. If a word is capable of two usages, and in the context one makes good sense and the other nonsense, good sense prevails whether the statute be civil or criminal.

The judgment is reversed and the indictment reinstated.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.