656 A.2d 1246

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JOSEPH
LEON HALISKI, DEFENDANT–APPELLANT.

Argued January 4, 1995—Decided April 20, 1995.

*Stephen W. Kirsch,* Assistant Deputy Public Defender, argued the cause for appellant (*Susan L. Reisner,* Public Defender, attorney).

*Carol M. Henderson,* Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Richard W. Berg,* Deputy Attorney General, on the letter in lieu of brief).

The opinion of the Court was delivered by COLEMAN, Justice.

The central issue in this appeal is whether a second Graves Act offender may be sentenced to a mandatory extended term of imprisonment while the first Graves Act conviction is pending on appeal or the time to appeal that conviction has not expired. A second issue is whether defendant may have his sentence increased to an extended sentence following affirmance of the first Graves Act conviction without violating principles of fundamental fairness.

## I

A jury found defendant guilty of first-degree robbery, a violation of *N.J.S.A.* 2C:15–1. In a presentence hearing conducted

pursuant to *N.J.S.A.* 2C:43–6d, the trial court found that defendant was armed with a firearm during the commission of the robbery and was therefore subject to a mandatory extended-term sentence under the Graves Act, *N.J.S.A.* 2C:43–6c. The court found that a mandatory extended prison term was required because defendant previously had been convicted of another armed robbery with a firearm. The trial judge sentenced defendant on June 22, 1990, to a mandatory extended term of fifty years with seventeen years of parole ineligibility. The extended sentence was to run consecutive to a fifteen-year prison term with five years of parole ineligibility imposed for his first Graves Act conviction. The first Graves Act offense, which made defendant eligible for the mandatory extended term, was on appeal when defendant was sentenced on June 22, 1990.

In an unpublished opinion dated April 15, 1992, the Appellate Division affirmed defendant's second robbery conviction. The court, however, vacated the sentence and remanded the matter for resentencing based on the Deputy Attorney General's impression that defendant "must be resentenced because he was sentenced as a second Graves Act offender before the time to appeal his prior Graves Act conviction had expired." We denied defendant's petition for certification. 130 *N.J.* 393, 614 *A.*2d 616 (1992).

On remand, the trial court resentenced defendant on July 10, 1992, to an ordinary prison term of fifteen years with a five-year term of parole ineligibility. The sentence was made to run consecutive to the sentence imposed for the first Graves Act robbery. At the time of the resentencing, the trial judge apparently was unaware the Appellate Division had affirmed the first Graves Act conviction eighty-seven days earlier in an unreported decision dated April 14, 1992. Indeed, counsel for defendant informed the judge, "I believe that appeal is still pending even as we speak." Without intending any criticism, we note that this oversight may have been caused by the fact that neither of the Appellate Division decisions mentioned the other, even though both were decided by the same judges and filed one day apart.

On October 9, 1992, the State filed a motion pursuant to *Rule* 3:21–10(b)(4) to vacate the ordinary term sentence on the second Graves Act robbery. The State alleged the sentence was illegal at the time it was imposed because the Appellate Division already had affirmed the first Graves Act conviction and no petition for certification had been filed. The State relied on *State v. Paladino*, 203 *N.J.Super.* 537, 549, 497 *A.*2d 562 (App.Div.1985), for its assertion that an illegal sentence is correctable at any time. Defendant concedes that he could have no legitimate expectations of finality in an illegal sentence. The trial court granted the State's motion and imposed the original mandatory extended term. Defendant also concedes that the only legal sentence as of the time of that second resentencing was the one imposed based on the State's October 9 motion.

The Appellate Division affirmed the reimposition of the mandatory extended term. 273 *N.J.Super.* 157, 641 *A.*2d 549 (1994). The majority opinion ruled that in sentencing a second Graves Act offender whose prior Graves Act conviction is pending on appeal, the court must impose initially an ordinary prison term because *N.J.S.A.* 2C:44–4b directs that a conviction is not to be considered "prior" before "the time to appeal has expired." *Id.* at 160, 641 *A.*2d 549. The majority further held that once the prior Graves Act conviction is affirmed, the State is entitled to have the sentence increased to an extended term. *Ibid.* The court reasoned that the ordinary sentence is rendered illegal by the affirmance of the prior Graves Act conviction, and an illegal sentence may be corrected at any time. *Ibid.* (citing *Rule* 3:22–2(c)); *State v. Kirk*, 243 *N.J.Super.* 636, 581 *A.*2d 115 (App.Div.1990)). The court found that correcting the illegal sentence did not violate considerations of fundamental fairness in view of the legislative mandate.

In a concurring opinion, Judge Stern disagreed with the rule of law announced by the majority. 273 *N.J.Super.* at 161, 641 *A.*2d 549. He found no statutory authority for the proposition that a legal ordinary Graves Act sentence may later be increased to an

extended term following an affirmance of a prior Graves Act conviction. Nor did he find any authority for concluding that an extended term may be imposed subject to a subsequent decrease should the prior conviction be reversed on appeal. *Id.* at 162, 641 *A.2d* 549. He was persuaded that the clear language of *N.J.S.A.* 2C:44–4b prohibits a court from considering a prior judgment as a conviction for Graves Act extended-term purposes if there is an appeal pending, or the time to appeal has not expired. He expressed the view that the Legislature, not the Judiciary, should address the apparent ambiguity in the statutory scheme. *Id.* at 163, 641 *A.2d* 549.

Even though Judge Stern disagreed with the rule announced in the majority decision, he concurred in the judgment of the court based on his conclusion that the imposition of the Graves Act extended term under the circumstances presented did not violate defendant's due-process or double-jeopardy rights. *Id.* at 164, 641 *A.2d* 549. Relying on *State v. Rodriguez,* 97 *N.J.* 263, 271, 478 *A.2d* 408 (1984), he reasoned that because defendant's initial appeal challenged the conviction itself as well as the sentence, defendant had no legitimate expectation of finality with respect to his sentence. 273 *N.J.Super.* at 164, 641 *A.2d* 549. Hence, the majority and concurring opinions agreed that imposition of the mandatory extended term, once the prior conviction had been affirmed, did not infringe defendant's constitutional rights. *Id.* at 165, 641 *A.2d* 549. We granted certification, 137 *N.J.* 310, 645 *A.2d* 139 (1994). We affirm the sentence imposed, but we reject the sentencing procedure approved by the Appellate Division.

## II

This case requires us to resolve the tension between two statutes, *N.J.S.A.* 2C:43–6c and *N.J.S.A.* 2C:44–4b, which touch upon the legislative intent to require mandatory terms of imprisonment for some repeat offenders who use or possess firearms during the commission of certain offenses. Those statutes must be analyzed against the backdrop of the well-established principle

that instead of rehabilitation, "the Graves Act approach is deterrence through the promise of imprisonment." *State v. Des Marets,* 92 *N.J.* 62, 71, 455 *A*.2d 1074 (1983); *see also State v. Stewart,* 96 *N.J.* 596, 601, 477 *A*.2d 300 (1984) (stating that Graves Act "seeks to deter crime, not to rehabilitate criminals").

The Graves Act directs that under some circumstances a defendant who has a prior Graves Act conviction must be required to serve an extended sentence. The Graves Act mandatory extended-sentence provision, *N.J.S.A.* 2C:43–6c, provides:

> A person who has been convicted of an offense enumerated by this subsection and who used or possessed a firearm during its commission, attempted commission or flight therefrom and who has been previously convicted of an offense involving the use or possession of a firearm as defined in 2C:44–3d., shall be sentenced by the court to an extended term as authorized by 2C:43–7c., notwithstanding that extended terms are ordinarily discretionary with the court.

*N.J.S.A.* 2C:44–4b defines "prior conviction of a crime" as follows:

> An adjudication by a court of competent jurisdiction that the defendant committed a crime constitutes a prior conviction, although sentence or the execution thereof was suspended, provided that the time to appeal has expired and that the defendant was not pardoned on the ground of innocence.

Defendant argues that the plain language of *N.J.S.A.* 2C:44–4b demands that a conviction cannot be considered "prior" for purposes of enhanced sentencing under the Graves Act unless "the time to appeal [that prior conviction] has expired." He claims further that a literal reading of *N.J.S.A.* 2C:44–4b is supported by *State v. Mangrella,* 214 *N.J.Super.* 437, 445, 519 *A*.2d 926 (App. Div.1986), *certif. denied,* 107 *N.J.* 127, 526 *A*.2d 194 (1987). As a corollary, defendant asserts that the failure of the Legislature to act to amend *N.J.S.A.* 2C:44–4b following *Mangrella* is indicative of the Legislature's approval of that decision's application of *N.J.S.A.* 2C:44–4b.

*Mangrella* held that chronologically sequential convictions (first offense must be the first conviction or judgment) are not required for imposition of discretionary sentence-enhancement as a "persistent offender" under *N.J.S.A.* 2C:44–3a. *Id.,* 214 *N.J.Super.* at 445, 519 *A*.2d 926. In that discretionary sentence enhancement

context, *Mangrella* also held that all judgments that otherwise satisfy the requirements of *N.J.S.A.* 2C:44–3a may be considered for sentencing "provided that there is no pending appeal or right to direct appeal." *Ibid.*

It is well established that in construing a statutory provision, courts must seek to fulfill the statutory objective "so far as the terms of the legislation and proper consideration of the interests of those subject to it will fairly permit." *State v. Gill,* 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966) (citing *State v. Provenzano,* 34 *N.J.* 318, 322, 169 *A.*2d 135 (1961)). Moreover, "whatever be the rule of [statutory] construction, it is subordinate to the goal of effectuating the legislative plan as it may be gathered from the enactment 'when read in full light of its history, purpose and context.' " *Ibid.* (quoting *Lloyd v. Vermeulen,* 22 *N.J.* 200, 204, 125 *A.*2d 393 (1956)); *accord Roig v. Kelsey,* 135 *N.J.* 500, 515, 641 *A.*2d 248 (1994); *Lesniak v. Budzash,* 133 *N.J.* 1, 8, 626 *A.*2d 1073 (1993). Finally, it is axiomatic that statutory interpretations that lead to absurd or unreasonable results are to be avoided. *Ibid.* (citing *Robson v. Rodriguez,* 26 *N.J.* 517, 528, 141 *A.*2d 1 (1958)).

▮▮▮ In determining the interaction between *N.J.S.A.* 2C:44–4b and the Graves Act mandatory extended-term provision, we must examine the legislative intent underlying each statute. Fundamentally, the Graves Act reflects the clear intent on the part of the Legislature to impose mandatory prison terms on those who arm themselves prior to the commission of certain offenses. *State v. Hawks,* 114 *N.J.* 359, 365–66, 554 *A.*2d 1330 (1989). The legislative history of the Graves Act indicates the Act is concerned only with deterrence and is wholly unconcerned with rehabilitation. *Ibid.; State v. White,* 98 *N.J.* 122, 128, 484 *A.*2d 691 (1984); *Stewart, supra,* 96 *N.J.* at 601, 477 *A.*2d 300. Thus, the essential spirit underlying the Graves Act is that the promise and certainty of a mandatory prison term is absolutely indispensable to achieving deterrence of the use of firearms during the commission of crimes. *See Hawks, supra,* 114 *N.J.* at 366, 554 *A.*2d 1330 (stating "the potency of [the Graves Act's] deterrent value lies precisely in

the certainty of enhanced punishment"); *Des Marets, supra,* 92 *N.J.* at 71, 455 *A.2d* 1074 (stating "the Graves Act approach is deterrence through the promise of imprisonment"). This case invokes the judicial obligation to enforce a legislatively mandated extended term sentence with parole ineligibility for the protection of society. *State v. Jefimowicz,* 119 *N.J.* 152, 162, 574 *A.2d* 428 (1990); *Des Marets, supra,* 92 *N.J.* at 80, 455 *A.2d* 1074.

The legislative history of *N.J.S.A.* 2C:44–4b offers little definitive guidance. The former statutory provision was part of the original enactment of the Code of Criminal Justice (Code) by *L.* 1978, *c.* 95, effective September 1, 1979. Its terms were expressly limited to determinations to be made under *N.J.S.A.* 2C:44–1 (encompassing statutory aggravating and mitigating factors), and *N.J.S.A.* 2C:44–3a (relating to persistent offenders). It contained the qualification which remains unchanged: "provided that the time to appeal has expired." Before the Code became effective, however, *N.J.S.A.* 2C:44–4b was amended by *L.* 1979, *c.* 178, § 96, also effective September 1, 1979, deleting the limitation of its scope to *N.J.S.A.* 2C:44–1 and 44–3a matters. The Senate Judiciary Committee's Statement that accompanied the amendatory legislation indicated that *N.J.S.A.* 2C:44–4 was rewritten "for purposes of clarity." Senate Judiciary Committee Statement to Senate Bill No. 3203, at 10 (June 18, 1979). It stated that the only significant change was to recognize a conviction in another jurisdiction that authorized imprisonment in excess of six months. *Ibid.*

Apart from the legislative history of the two statutes, the Code's enhancement of sentence for multiple offenders based on prior convictions is not uniform. Under *N.J.S.A.* 2C:14–6, the enhancement of sentence for a second or subsequent sex offender requires not only that the second or subsequent offense follow the first offense chronologically, but also that the second or subsequent offense occur *after* there has been a conviction on the prior offense. *State v. Anderson,* 186 *N.J.Super.* 174, 175, 451 *A.2d* 1326 (App.Div.1982), *aff'd o.b.,* 93 *N.J.* 14, 459 *A.2d* 302 (1983). In

other words, chronologically sequential offenses and convictions are required. *Id.,* 186 *N.J.Super.* at 177, 451 *A.*2d 1326. The reason for this special treatment of multiple sex offenders is the perceived legislative objective of rehabilitating first-time sex offenders, unless a firearm was used or possessed, in which case the Graves Act applies.

In contrast, chronology of offenses for sentence enhancement of a "persistent offender" under *N.J.S.A.* 2C:44–3a is not important. The sequence of convictions controls. Thus, if a conviction on a previous offense occurs *prior* to the date of sentencing on the "subsequent" offense then before the court, the "previous offense" requirement has been met. *Mangrella, supra,* 214 *N.J.Super.* at 445–46, 519 *A.*2d 926. The purpose in this setting is discretionary enhancement of punishment.

Similarly, the same bright line has been adopted with respect to mandatory extended terms under the Graves Act. *Hawks, supra,* 114 *N.J.* at 361, 554 *A.*2d 1330, holds that for mandatory extended terms under *N.J.S.A.* 2C:43–6c, the chronological sequence of the offenses and the convictions is not relevant. Here, too, the legislative purpose is punishment, not rehabilitation.

This Court applied a similar approach in determining whether a prior murder conviction can be used for penalty enhancement in death penalty cases if that conviction is on appeal. In *State v. Bey,* 96 *N.J.* 625, 629, 477 *A.*2d 315 (1984), we held that the use of a prior murder conviction as a statutory aggravating factor in the penalty phase of a capital proceeding does not require the prior conviction to have been entered before the occurrence of the capital murder. Rather, the Court noted, "the status of the prior conviction at the time of its intended use—the penalty phase of the subsequent murder prosecution—is determinative." *Ibid.* Thus, chronology of the prior offense is not significant, provided the prior conviction occurred before the jury's consideration of the penalty in the capital case. *Ibid.* Nevertheless, the Court held that a prior murder conviction that is either on appeal or subject to appeal may not be used as an aggravating factor. *Id.* at 628,

477 A.2d 315. The same result was reached in *State v. Biegenwald*, 96 *N.J.* 630, 636–37, 477 *A.*2d 318 (1984). In response to the Court's invitation in *Biegenwald, id.* at 640, 477 *A.*2d 318, the Legislature amended the statute to dispense with the requirements that direct appeals be concluded or the time to appeal expired before the prior conviction may be considered an aggravating factor. *See N.J.S.A.* 2C:11–3c(4)(a) (codifying *L.* 1985, *c.* 178).

Even though *Bey* and *Biegenwald* relied on *N.J.S.A.* 2C:44–4b to preclude the use of a prior murder conviction as an aggravating factor in a capital case before the right to appeal that conviction became final, the Court went to great lengths to make clear that its holding was required because life was at stake, rendering the penalty "profoundly different from all other penalties." *Biegenwald, supra,* 96 *N.J.* at 639, 477 *A.*2d 318 (quoting *Lockett v. Ohio,* 438 *U.S.* 586, 605, 98 *S.Ct.* 2954, 2965, 57 *L.Ed.*2d 973, 990 (1978)). In addition, the profoundly different penalty is ordinarily imposed by a jury rather than a judge. Thus, a sentence enhanced by a prior murder that was not final would require retrial of the penalty phase in the event of a reversal of the prior murder conviction.

Significantly, *Biegenwald* also acknowledged that although *N.J.S.A.* 2C:44–4b is derived from the Model Penal Code § 7.05, *id.* at 636, 477 *A.*2d 318, "our resolution of the question presented is not free from doubt. We note that the Model Penal Code § 7.05 ... now appears to be the minority rule." *Id.* at 639, 477 *A.*2d 318. That prompted the Court to observe further that *N.J.S.A.* 2C:44–4b "plausibly could be read to apply to convictions despite the fact that a direct appeal is pending." *Id.* at 640, 477 *A.* 2d 318.

The majority of courts in other jurisdictions construing the term "conviction" used in the Model Penal Code § 7.05, or their state's comparable provision with respect to sentence enhancement, have concluded that a pending appeal on a prior conviction does not preclude its use for enhancement of sentence. These jurisdictions also permit the defendant to petition for modification of sentence if

the prior conviction is reversed. *See, e.g., Prock v. State,* 471 *So.*2d 519 (Ala.Crim.App.1985); *Wright v. State,* 656 *P.*2d 1226 (Alaska Ct.App.1983); *State ex rel. Corbin v. Court of Appeals,* 103 *Ariz.* 315, 441 *P.*2d 544 (1968); *State v. Swartz,* 140 *Ariz.* 516, 683 *P.*2d 315 (Ct.App.1984); *Birchett v. State,* 291 *Ark.* 379, 724 *S.W.*2d 492 (1987); *Glick v. State,* 286 *Ark.* 133, 689 *S.W.*2d 559 (1985); *People v. Sarnblad,* 26 *Cal.App.*3d 801, 103 *Cal.Rptr.* 211 (1972); *People v. Clapp,* 67 *Cal.App.*2d 197, 153 *P.*2d 758 (1944); *People v. District Court of Tenth Judicial Dist.,* 192 *Colo.* 375, 559 *P.*2d 235 (1977); *Maisonet v. State,* 448 *N.E.*2d 1052 (Ind.1983); *State v. Eisminger,* 124 *Kan.* 464, 260 *P.* 661 (1927); *State v. Martin,* 316 *So.*2d 740 (La.1975); *State v. Heald,* 382 *A.*2d 290 (Me.1978); *People v. Morlock,* 234 *Mich.* 683, 209 *N.W.* 110 (1926); *Jackson v. State,* 418 *So.*2d 827 (Miss.1982); *State v. Radi,* 176 *Mont.* 451, 578 *P.*2d 1169 (1978), *appeal after remand,* 185 *Mont.* 38, 604 *P.*2d 318 (1979); *State v. Romero,* 1 *Or.App.* 217, 461 *P.*2d 70 (1969); *State v. Gallegos,* 849 *P.*2d 586 (Utah Ct.App.1993); *State v. Wimmer,* 152 *Wis.*2d 654, 449 *N.W.*2d 621 (1989), *review denied,* 454 *N.W.*2d 806 (Wis.1990); *cf. State v. Tipton,* 77 *N.M.* 1, 419 *P.*2d 216 (1966) (stating that for purposes of habitual-offender statute, plea of guilty constitutes a "conviction" even though sentence has not yet been imposed).

We find persuasive the reasoning of a number of these courts espousing the majority position. For example, in *District Court of Tenth Judicial Dist., supra,* 559 *P.*2d at 236, the Supreme Court of Colorado reasoned:

> If prior convictions on appeal were not included [as "prior convictions" under habitual criminal statute], many recent felony convictions might be effectively exempted from the operation of the statute. This would be clearly inconsistent with the obvious purpose of the statute, which is to punish repeat offenders.

Similarly, we find the reasoning of the Supreme Judicial Court of Maine in *Heald, supra,* compelling:

> The legislative purpose [underlying the habitual offender statute] would be frustrated if the statute applied only to previous convictions which later became final judgments. Indeed, the recidivist who appealed his previous conviction would escape the penal additive of the habitual offender statute, notwithstanding that his previous conviction was affirmed on appeal. The Legislature [in utilizing the

language "had been before convicted and sentenced to any state prison" in its habitual offender statute] undoubtedly had in mind that many appeals are frivolous, and, even in the case of non-frivolous appeals, that the percentage of reversals is minimal.

[382 *A.*2d at 299.]

We also find persuasive the conclusion of the Supreme Court of Arkansas in *Birchett, supra,* 724 *S.W.*2d at 492, regarding the practical implications of accepting defendant's argument:

Adopting the theory advanced by the appellant would result, as a practical matter, in rarely ever being able to apply the habitual criminal statutes, since criminal defendants have numerous avenues through which to seek relief, including direct appeal, petitions under Rule 37, and federal habeas corpus petitions. We do not believe that the legislature intended the result urged by the appellant.

[*Ibid.* (quoting *Hill v. State,* 13 *Ark.App.* 307, 683 *S.W.*2d 628, 630 (1985)).]

As that court noted, "Under appellant's proposal, not only would the use of prior convictions for enhancement purposes be delayed, but, in many cases, the State would be foreclosed from availing itself of their use." *Id.,* 724 *S.W.*2d at 493.

The contrary rule is followed in a healthy minority of jurisdictions. *See, e.g., Baxter v. State,* 617 *So.*2d 338 (Fla.Dist.Ct.App. 1993); *Croker v. Smith,* 225 *Ga.* 529, 169 *S.E.*2d 787 (1969); *Melson v. Commonwealth,* 772 *S.W.*2d 631 (Ky.1989); *State v. Lewis,* 564 *So.*2d 765 (La.Ct.App.1990); *Butler v. State,* 46 *Md. App.* 317, 416 *A.*2d 773 (1980); *State v. Lane,* 642 *S.W.*2d 935 (Mo.Ct.App.1982); *State v. Estes,* 238 *Neb.* 692, 472 *N.W.*2d 214 (1991); *Staniforth v. State,* 24 *Ohio App.* 208, 156 *N.E.* 924 (1927); *Morse v. State,* 63 *Okla.Crim.* 445, 77 *P.*2d 757 (1938); *Jones v. State,* 711 *S.W.*2d 634 (Tex.Crim.App.1986); *White v. Commonwealth,* 79 *Va.* 611 (1884); *State v. Alexander,* 10 *Wash.App.* 942, 521 *P.*2d 57 (1974).

### III

We do not find convincing defendant's argument that the legislative inaction or silence following *Mangrella* justifies the conclusion that the Legislature approves of that court's reading of *N.J.S.A.* 2C:44–4b. Because *Mangrella* involves discretionary sentence enhancement of persistent offenders rather than manda-

tory enhancement of a sentence under the Graves Act, the Legislature might not have found that decision inconsistent with the overall sentencing policy of the Code. When the Graves Act was enacted by *L.* 1981, *c.* 31, § 1, effective February 12, 1981, the Legislature at the same time amended *N.J.S.A.* 2C:44–3 to proscribe the use of the persistent offender statute when sentencing a Graves Act offender. That statutory amendment directs that if a defendant "is being sentenced for commission of any of the offenses enumerated in *N.J.S.* 2C:43–6c . . ., the court *shall* sentence the defendant to an extended term as required by *N.J.S.* 2C:43–6c." *N.J.S.A.* 2C:44–3. (emphasis added). Because the Legislature had decreed five years before *Mangrella* was decided that the discretionary persistent offender statute may not be used when sentencing a Graves Act offender, there was no need for the Legislature to react to *Mangrella.*

Beyond that, *Mangrella* relies on the holdings in *Bey* and *Biegenwald* to support its interpretation of *N.J.S.A.* 2C:44–4b. The Legislature responded immediately to *Bey*'s and *Biegenwald*'s literal application of *N.J.S.A.* 2C:44–4b by amending the definition of a prior murder as an aggravating factor in a capital case. With that change, a prior murder became final "when sentence is imposed and may be used as an aggravating factor regardless of whether it is on appeal." *L.* 1985, *c.* 178 (effective June 10, 1985). Given the limited application of *Mangrella* to discretionary extended terms, the Legislature could have found a rational basis not to change the law. In addition, "[t]he Legislature need not explicitly amend a statute . . . every time [a court] takes action inconsistent with it in order to avoid the implication that the Legislature concurs." *State v. Cannon,* 128 *N.J.* 546, 566–67, 608 *A.*2d 341 (1992). The Court has noted in other contexts that "legislative inaction has been called a 'weak reed upon which to lean' and a 'poor beacon to follow' in construing a statute." *G.E. Solid State, Inc. v. Director, Div. of Taxation,* 132 *N.J.* 298, 313, 625 *A.*2d 468 (1993) (citations omitted); *Amerada Hess Corp. v. Director, Div. of Taxation,* 107 *N.J.* 307, 322, 526 *A.*2d 1029 (1987) (citations omitted), *aff'd,* 490 *U.S.* 66, 109 *S.Ct.*

1617, 104 *L.Ed.*2d 58 (1989). We find persuasive a comment of Justice Scalia:

> [O]ne must ignore rudimentary principles of political science to draw any conclusions regarding [current Congressional] intent from the *failure* to enact legislation. The "complicated check on legislation," The Federalist No. 62, p. 378 (C. Rossiter ed. 1961), erected by our Constitution creates an inertia that makes it impossible to assert with any degree of assurance that congressional failure to act represents (1) approval of the status quo, as opposed to (2) inability to agree upon how to alter the status quo, (3) unawareness of the status quo, (4) indifference to the status quo, or even (5) political cowardice....
>
> [*Johnson v. Transportation Agency, Santa Clara County,* 480 *U.S.* 616, 671–72, 107 *S.Ct.* 1442, 1472, 94 *L.Ed.*2d 615, 656 (1987) (Scalia, J., dissenting).]

Here, as in the past, "[W]e find the doctrine of probable legislative intent a more reliable guide than the so-called doctrine of legislative inaction." *Amerada Hess Corp., supra,* 107 *N.J.* at 322, 526 *A.*2d 1029. In determining how the Legislature would resolve the interaction between *N.J.S.A.* 2C:44–4b and the Graves Act mandatory extended-term provision, we find far more compelling the clear legislative intent underlying the Graves Act than we find the Legislature's inaction following *Mangrella.*

Having considered the legislative intent underlying both the Graves Act and *N.J.S.A.* 2C:44–4b, we reject the overly literal construction of *N.J.S.A.* 2C:44–4b urged by defendant. As Justice Stein stated for a unanimous Court in *State v. State Troopers Fraternal Ass'n,* 134 *N.J.* 393, 417–18, 634 *A.*2d 478 (1993), the literal meaning of a statute should not be applied when the Court is

> thoroughly convinced that the Legislature did not intend the [statute] to apply to the State Police, and we now so hold. Our conclusion is reinforced by Judge Learned Hand's classic admonition that "[t]here is no surer way to misread any document than to read it literally." *Guiseppi v. Walling,* 144 *F.*2d 608, 624 (2d Cir.1944). As we observed in *Schierstead v. Brigantine,* [29 *N.J.* 220, 148 *A.*2d 591 (1959) ], "statutes are to read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.' " 29 *N.J.* at 230, 148 *A.*2d 591 (quoting *Morris Canal & Banking Co. v. Central R.R. Co.,* 16 *N.J.Eq.* 419, 428 (Ch.1863)).... We cannot conceive that the Legislature intended the discipline amendment to apply to only the State Police and to no other major police department in the State.

In the present case, we cannot conceive that the Legislature intended *N.J.S.A.* 2C:44–4b to prevent the imposition of an extended term mandated by *N.J.S.A.* 2C:43–6c while the prior Graves Act conviction was pending on appeal or before the time for such an appeal expired, and we now so hold. We are persuaded that insofar as the Graves Act is concerned, the purpose of *N.J.S.A.* 2C:44–4b is to prevent the enhanced sentence from becoming final before completion of the direct appeal in the prior Graves Act conviction or before the time for that appeal has expired.

That interpretation is consistent with the Code's foremost policy "of assuring severity [of sentence] and deterrence" of those repeat offenders who use or possess guns during the commission of certain serious offenses such as robberies and rapes. *Cannon, supra,* 128 *N.J.* at 571, 608 *A.*2d 341. Towards that end, the Legislature has directed that the Criminal Code be interpreted to further the general purposes of extended-term sentencing as defined in *N.J.S.A.* 2C:1–2b, including the insurance of "the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection." *N.J.S.A.* 2C:1–2b(3); *State v. Dunbar,* 108 *N.J.* 80, 90–91, 527 *A.*2d 1346 (1987). Under our holding, a defendant is not allowed "to escape the statutorily-required higher penalty because he or she has not yet been convicted, [based on a literal reading of *N.J.S.A.* 2C:44–4b], either because of strategic maneuvering by counsel or because of the vicissitudes of the court docket, [which creates] for defendants a windfall not envisioned by the Legislature." *Hawks, supra,* 114 *N.J.* at 366–67, 554 *A.*2d 1330. "The sentence, as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense." *Bozza v. United States,* 330 *U.S.* 160, 166–67, 67 *S.Ct.* 645, 649, 91 *L.Ed.* 818, 822 (1947).

We reject that part of the Appellate Division holding that concluded that *N.J.S.A.* 2C:44–4b precludes the imposition of a mandatory extended term at the initial sentencing if an appeal is

pending on the prior Graves Act conviction or if the time to appeal has not expired. *Mangrella, supra,* 214 *N.J.Super.* at 445, 519 *A.*2d 926, is inapposite to an inquiry concerning the mandatory sentencing provisions of the Graves Act. It does not presage a rule that applies to Graves Act cases.

## IV

Our holding requires the trial court to impose a provisional sentence. Such a sentence is provisional in the sense that if the prior Graves Act conviction is reversed on appeal, the mandatory extended term must be vacated in order to vindicate the purpose of *N.J.S.A.* 2C:44–4b.

Provisional sentences as authorized dispositions within the meaning of *N.J.S.A.* 2C:43–2 are not novel in New Jersey. They have been established both under the Code as well as independent of legislative enactments. One example of a legislatively created provisional sentence is *N.J.S.A.* 2C:44–1f(2), which permits the State to file an appeal within ten days of imposition of sentence if a defendant is sentenced on a first- or second-degree offense to probation, a noncustodial term, or to a term authorized for an offense one degree lower than the crime for which defendant was convicted. *See State v. Sanders,* 107 *N.J.* 609, 527 *A.*2d 442 (1987); *State v. Williams,* 203 *N.J.Super.* 513, 497 *A.*2d 550 (App.Div.1985); *State v. Watson,* 183 *N.J.Super.* 481, 444 *A.*2d 603 (App.Div.1982). In this context, the State is permitted to seek an increase in the sentence.

A second example of a legislatively created provisional sentence is *N.J.S.A.* 2C:47–4c, which allows the Commissioner of the Department of Corrections to seek a reduction in a discretionary sentence. *State v. Chapman,* 95 *N.J.* 582, 472 *A.*2d 559 (1984). Although the scope of this modification of sentence is limited under *N.J.S.A.* 2C:47–4c, it nonetheless makes the original sentence provisional because the statute creates the procedure for reducing the sentence *after* a portion of it has been served at the Adult Diagnostic and Treatment Center in Avenel. *See Chapman,*

*supra,* 95 *N.J.* at 592–94, 472 *A.*2d 559. That statutory procedure is similar to applications for change of sentences under *Rule* 3:21–10.

A third type of provisional sentence is found in the Pretrial Intervention Program (PTI), which was created initially by the Supreme Court through its rule making power, N.J.Const. (1947) art. VI, § 2, ¶ 3; *R.* 3:28, and later by the Legislature, *N.J.S.A.* 2C:43–12 to –22. *See State v. Nwobu,* 139 *N.J.* 236, 245, 652 *A.*2d 1209 (1995).

The clearest example of provisional sentencing without express legislative approval that is analogous to the one we establish today results from the Intensive Supervision Program, known as ISP. That program permits a panel of judges to reduce the custodial sentence of a defendant found to be qualified for the program. ISP "is a sentencing alternative that removes carefully selected defendants from prison and releases them into the community under standards of supervision." *Cannon, supra,* 128 *N.J.* at 549, 608 *A.*2d 341. The goals of ISP "are reduction in prison overcrowding, appropriate punishment of the offender, and rehabilitation." *Ibid. Cannon* limits admission into ISP to non-first- and non-second-degree offenders, 128 *N.J.* at 548, 608 *A.*2d 341, but this limitation was modified by *L.* 1993, *c.* 123, § 2a(3), to permit some second-degree offenders to be considered. *State v. McPhall,* 270 *N.J.Super.* 454, 457, 637 *A.*2d 544 (App.Div.), *certif. denied,* 137 *N.J.* 309, 645 *A.*2d 138 (1994).

Not only was ISP initiated in 1983 without legislative approval, but it was started without a court rule formalizing it. *State v. Clay,* 230 *N.J.Super.* 509, 512–13, 553 *A.*2d 1356 (App.Div.1989), *aff'd o.b.,* 118 *N.J.* 251, 571 *A.*2d 295 (1990). The program was instituted by the Supreme Court pursuant to an order signed by the Chief Justice dated May 26, 1983, relying on Article VI, Section II, Paragraph 3 of the 1947 New Jersey Constitution. *Id.* at 515–16, 553 *A.*2d 1356. *Rule* 3:21–10(b)(2) was relaxed; *Rule* 3:21–10(e) and *Rule* 3:21–10(b)(5) were added to permit motions for admission into ISP, effective September 1983. Thereafter,

there was legislative approval through budgetary appropriations. *Cannon, supra,* 128 *N.J.* at 562–63, 608 *A.*2d 341; *Clay, supra,* 230 *N.J.Super.* at 512, 516–17, 553 *A.*2d 1356. Because all persons admitted into the program are conditionally released from a custodial sentence, those candidates are recipients of a provisional sentence.

Based on this Court's power to administer the criminal justice system, *State v. Abbati,* 99 *N.J.* 418, 432–33, 493 *A.*2d 513 (1985), we exercise that power to establish provisional sentencing of subsequent Graves Act offenders regardless of the appeal status of the prior Graves Act conviction. When a defendant before the trial court is exposed to a Graves Act mandatory extended term, the trial court shall impose the extended term. However, should the prior conviction be reversed on appeal subsequently, the trial court shall, on motion by a defendant pursuant to *Rule* 3:21–10(b)(4) or *Rule* 3:22–2, amend the extended-term sentence to an ordinary Graves Act sentence.

The rule we announce today conserves judicial resources. A review of statistical data for the 1991, 1992, and 1993 court terms of the Appellate Division reveals that the rate of reversal in criminal cases was approximately thirteen percent. Assuming the same approximate rate applies to Graves Act convictions, that rate suggests there will be few applications for modification of the sentence based on reversal of the first Graves Act conviction. The procedure adopted by the Appellate Division would have the opposite effect.

## V

Defendant argues further that any increase in his sentence from the ordinary term imposed on his first resentencing to the extended term imposed on his second resentencing constitutes a due-process violation. He claims that it is fundamentally unfair for him to receive the sentence originally imposed after succeeding in having that very sentence declared illegal by the Appellate Division. Although defendant concedes he suffered no double-jeopar-

dy violation, his fundamental-fairness argument is intertwined with double-jeopardy principles. *State v. Gallegan,* 117 *N.J.* 345, 355, 567 *A.*2d 204 (1989). He also claims a due-process deprivation on the ground that the ultimate imposition of the extended term was made possible only by virtue of the trial court's error in imposing the extended term in the first instance. Finally, defendant argues that due process requires that the status of his prior Graves Act conviction be "frozen in time" as of the date of the original sentencing. That argument presupposes that *N.J.S.A.* 2C:44–4b precluded imposition of the extended term at that time.

We find that defendant has suffered no deprivation of his constitutional rights as a result of the imposition of the mandatory extended term on his second resentencing.

■ This Court has held that a defendant who appeals his substantive conviction along with the corresponding sentence has no legitimate expectation of finality in either the underlying conviction or the corresponding sentence. *Rodriguez, supra,* 97 *N.J.* at 263, 478 *A.*2d 408. The holding in *Rodriguez* significantly narrowed the scope of *State v. Ryan,* 86 *N.J.* 1, 8–9, 429 *A.*2d 332, *cert. denied,* 454 *U.S.* 880, 102 *S.Ct.* 363, 70 *L.Ed.*2d 190 (1981), which held that principles of double jeopardy foreclose the imposition of an increased prison sentence after a defendant has commenced serving a portion of that sentence. In *Rodriguez,* the Court instructed that "*Ryan* can be understood to hold that the commencement of sentence coupled with the defendant's expectation of finality in his original underlying conviction and sentence combined to raise a constitutional bar against an increase in that sentence." *Rodriguez, supra,* 97 *N.J.* at 270, 478 *A.*2d 408 (citing *Ryan, supra,* 86 *N.J.* at 9–10, 429 *A.*2d 332). Hence, after *Rodriguez,* the critical inquiry in assessing whether principles of due process and double jeopardy bar imposition of a sentence greater than one initially imposed is whether the defendant maintains a "legitimate expectation of finality" with respect to the sentence. *See United States v. DiFrancesco,* 449 *U.S.* 117, 101 *S.Ct.* 426, 66 *L.Ed.*2d 328 (1980) (holding that increase in original

sentence was constitutional because defendant had no expectation of finality in sentence where statute specifically authorized sentence to be increased); *North Carolina v. Pearce*, 395 *U.S.* 711, 89 *S.Ct.* 2072, 23 *L.Ed.*2d 656 (1969) (holding that increase in sentence following remand and retrial constitutional because defendant had no expectation of finality in sentence when he appealed underlying conviction as well as sentence); *Sanders, supra*, 107 *N.J.* at 619, 527 *A.*2d 442 (noting that under *DiFrancesco, supra*, 449 *U.S.* at 117, 101 *S.Ct.* at 426, 66 *L.Ed.*2d at 328, "the touchstone of the double jeopardy analysis lies in the expectation of finality that a defendant vests in his sentence").

*Pennsylvania v. Goldhammer*, 474 *U.S.* 28, 106 *S.Ct.* 353, 88 *L.Ed.*2d 183 (1985), reaffirmed the recognition in *DiFrancesco* that "the decisions of this Court 'clearly establish that a sentenc[ing in a noncapital case] does not have the qualities of constitutional finality that attend an acquittal.'" *Id.* at 30, 106 *S.Ct.* at 353–54, 88 *L.Ed.*2d at 186 (quoting *DiFrancesco supra*, 449 *U.S.* at 134, 101 *S.Ct.* at 436, 66 *L.Ed.*2d at 328). More recently, the Supreme Court again recognized the continuing validity of *DiFrancesco* in its decision in *Caspari v. Bohlen*, 510 *U.S.* ——, —— - ——, 114 *S.Ct.* 948, 954–56, 127 *L.Ed.*2d 236, 246–49 (1994). The Court in *Caspari* declined to rule on the specific question whether the double-jeopardy clause applies to noncapital sentencing proceedings and the related question of whether the persistent-offender proceeding involved in that case was sufficiently trial-like to invoke double-jeopardy protections under *Bullington v. Missouri*, 451 *U.S.* 430, 101 *S.Ct.* 1852, 68 *L.Ed.*2d 270 (1981) (holding that double-jeopardy clause limits the State's power to subject defendant to successive capital sentencing proceedings). Nonetheless, the Court made this telling comment:

Applying the Double Jeopardy Clause to successive noncapital sentencing is not such a groundbreaking occurrence. Persistent-offender status is a fact objectively ascertainable on the basis of readily available evidence. Either a defendant has the requisite number of prior convictions or he does not. Subjecting him to a second sentencing proceeding at which the State has the opportunity to show those convictions is not unfair, and will enhance the accuracy of the proceeding by ensuring that the determination is made on the basis of competent evidence. [*Caspari*, 510 *U.S.* at —— - ——, 114 *S.Ct.* at 956–57, 127 *L.Ed.*2d at 250.]

We take that comment as an indication that the Supreme Court generally perceives no double-jeopardy problems with a resentencing under a repeat-offender statute.

In the present case, defendant challenged the underlying conviction as well as the sentence on direct appeal. Under *DiFrancesco, Rodriguez,* and *Ryan,* defendant had no legitimate expectation of finality with respect to either the conviction or the sentence. *See Rodriguez, supra,* 97 *N.J.* at 271, 478 *A.*2d 408. Defendant is mistaken in his assertion that the holding of *Rodriguez* applies only where the appeal of the underlying conviction is successful. We hold that the outcome of an appeal of the underlying conviction is not highly relevant, if relevant at all, to a determination whether such an appeal attacking both the underlying convictions and sentence negates any legitimate expectation of finality on the part of a defendant. *Ibid.* What was sought by the appeal, rather than the relief, if any, obtained, defines what constitutes a legitimate expectation of finality. *See State v. Baker,* 270 *N.J.Super.* 55, 76–77, 636 *A.*2d 553 (App.Div.), *aff'd o.b.,* 138 *N.J.* 89, 648 *A.*2d 1127 (1994). To hold otherwise would mean the appeal was taken without any hope of changing the underlying conviction or sentence. Here, not only was there an expectation of success on appeal, but defendant succeeded in overturning the sentence, albeit improperly.

Moreover, the original sentence, a Graves Act extended term, was modified pursuant to the remand order of the Appellate Division dated April 15, 1992. Consequently, "[t]he trial court's action in this respect reflected its reaction to that determination. Since we find that the Appellate Division erred, it is appropriate that the initial sentencing determinations, which we find were proper, be reinstated." *Chapman, supra,* 95 *N.J.* at 596, 472 *A.*2d 559.

We also find unpersuasive defendant's reliance on *State v. Vasquez,* 129 *N.J.* 189, 609 *A.*2d 29 (1992), and *State v. Baylass,* 114 *N.J.* 169, 553 *A.*2d 326 (1989), in support of his argument for "freezing in time" his prior Graves Act conviction. *Vasquez* and

*Baylass* recognize that when seeking to vacate the initial provisional sentence of probation and to resentence to a custodial term following a violation of probation, the only aggravating factors the court may consider are those that existed at the time of the provisional sentencing. *Vasquez, supra,* 129 *N.J.* at 206, 609 *A.*2d 29; *Baylass, supra,* 114 *N.J.* at 176, 553 *A.*2d 326. The aggravating factors are used to determine the in-out decision as well as the range of the sentence. But aggravating factors do not play a role in determining whether a prior Graves Act offense exists. A prior Graves Act conviction is independent of the circumstances surrounding a subsequent Graves offense for which a defendant stands before the sentencing court. A prior Graves Act conviction is merely a statutorily designated trigger for the imposition of the mandatory extended term on a subsequent unrelated Graves Act conviction.

## VI

The rule we adopt today is to be given limited retroactive application. It shall apply to this case and all cases in which sentencing on the second Graves Act conviction has not yet occurred. It shall also apply in all cases where the defendant has been sentenced on the second Graves Act conviction, but as of the date of this decision, the parties have not exhausted all avenues of direct review on that conviction. *Montells v. Haynes,* 133 *N.J.* 282, 295–98, 627 *A.*2d 654 (1993); *Coons v. American Honda Motor Co., Inc.,* 96 *N.J.* 419, 425, 476 *A.*2d 763 (1984), *cert. denied,* 469 *U.S.* 1123, 105 *S.Ct.* 808, 83 *L.Ed.*2d 800 (1985); *State v. Burstein,* 85 *N.J.* 394, 402–03, 427 *A.*2d 525 (1981). The trial court will have to decide on a case-by-case basis whether today's ruling has altered a defendant's legitimate sentence expectation where negotiated pleas are involved. In those instances, the court must fashion the appropriate relief.

## VII

In sum, we hold that the trial court's imposition of the Graves Act mandatory extended term in the first instance was legal, and

that imposition of the mandatory extended term on defendant's second resentencing was not fundamentally unfair to him. The mandatory extended term must be imposed at the initial sentencing proceeding, subject to being vacated if the prior Graves Act conviction is reversed on appeal. Our holding shall be given limited retroactive application.

The judgment of the Appellate Division is affirmed.

O'HERN, Justice, dissenting.

In 1990 the trial court imposed an illegal, extended sentence under the mandatory extended-term provisions of the Graves Act. *N.J.S.A.* 2C:43-6c. (Commit certain crimes with a gun twice and you will go to prison for a very long time.) On defendant's appeal to the Appellate Division, the State acknowledged that the sentence was illegal when imposed. Rather than correct that judicial error, this Court takes advantage of an unusual chronology of events to reinstate a sentence that was illegal when given. In doing so, it designs a system of temporary sentencing that is neither authorized by law nor realistically required to impose a sentence that is appropriate for a criminal such as Haliski.

I

"As a general rule of statutory construction, we look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). There is nothing in the language of the New Jersey Code of Criminal Justice that authorizes the Court's decision.

We have always followed the language of the Code. In *State v. Hawks,* 114 *N.J.* 359, 554 *A.*2d 1330 (1989), we applied the mandatory extended-term provisions of the Graves Act to a defendant who committed two Graves Act offenses on separate occasions, but was convicted of the second offense before he was convicted of the first. We acknowledged the potential for results

that might be unfair or unforeseen when the orders of offense and conviction are reversed. But we shrugged off those concerns, being obliged to apply "the legislation as we understand it." *Id.* at 367, 554 *A.*2d 1330. The Code's definition of a "prior conviction" of a Graves Act crime does not require that the prior conviction be for a crime committed prior in time. Had the Code contemplated the temporary sentencing now suggested by the Court, Justice Clifford's task of writing the *Hawks* opinion would have been much easier; the Court could have fashioned a temporary sentence for the offense second in time, and increased or decreased it later.

We have always respected the language of the Code even when we believed that the Legislature might actually agree that changes should be made. *See State v. Cannon,* 128 *N.J.* 546, 608 *A.*2d 341 (1992) (refusing to allow admission of first- and second-degree offenders into Intensive Supervision Program because the language of the Code did not permit it). Even when sound policy considerations exist, it is not the function of courts to amend statutes. If legislation needs correction, it is a matter for the Legislature. "[I]t is simply one of the most basic understandings of the allocation of governmental powers among the three branches. The Legislature and the Executive do not decide cases—even though the Constitution does not say so; the judiciary does not pass laws." *Id.* at 560, 608 *A.*2d 341.

The Appellate Division suggested one scheme for assessing the effect of prior Graves Act convictions on appeal. The Court has fashioned another. The Legislature itself may have another. The Attorney General informs us that the State has been able to live with the interpretation of *State v. Mangrella,* 214 *N.J.Super.* 437, 519 *A.*2d 926 (App.Div.1986), *certif. denied,* 107 *N.J.* 127, 526 *A.*2d 194 (1987), without seeking an amendment to the Code. The Model Penal Code, from which the extended-sentence structure of the Code of Criminal Justice is largely derived, *State v. Dunbar,* 108 *N.J.* 80, 86, 527 *A.*2d 1346 (1987), represents a carefully constructed scheme of habitual-offender sentencing. The Model

Penal Code, which was ten years in the making, brought "thoughtfulness and rationality to a body of law that in many places sorely needed reform." Joshua Dressler, *Reflections on Excusing Wrongdoers: Moral Theory, New Excuses and the Model Penal Code,* 19 *Rutgers L.J.* 671, 671, 716 (1988). We should not lightly alter its provisions.

## II

The unusual circumstances of this case counsel against adding another complexity to the sentencing process. The first such circumstance was the failure of the original sentencing judge to realize that the case was not ripe for sentencing defendant as a second Graves Act offender. The law was clear under *Mangrella, supra,* 214 *N.J.Super.* at 445, 519 *A.*2d 926, that to impose a Graves Act extender the prior Graves Act conviction must no longer be on appeal. Law should be the product of reason, not chance. A loss of liberty should not depend on the chance of a lottery. Had the court or counsel been conscious of the law, defendant would not have received a Graves Act extender at his first sentencing. Absent that random circumstance he would not now receive a Graves Act extender. His legal sentence would have been affirmed. We cannot be proud of a sentencing process that depends on the existence of judicial error as the predicate to outcome.

Second, there is a logical inconsistency between the trial court's approach to a regular Graves Act sentence for armed robbery and the extended Graves Act sentence. Though defendant was a career criminal with a history of escalating violence, the court, by imposing on remand the regular sentence, gave the presumptive sentence for a first-degree offense of armed robbery of fifteen years with a required stipulation of five years without possibility of parole. *N.J.S.A.* 2C:43–6c and 2C:44–1f(1)(b). Had the court sentenced at the top of the range, as it well could have in the absence of a plea bargain, the sentence could have been twenty years with a ten-year parole ineligibility period.

Third, when the court sentenced defendant to the Graves Act extender, it inexplicably selected a higher range than for a regular sentence. In *Dunbar, supra,* 108 *N.J.* at 91–92, 527 *A.*2d 1346, we explained that in imposing an extended term the sentencer does not count twice the predicates that form the basis for the extended term, but rather considers whether there is something about the offense itself that requires the already extended sentence to be at a higher range. In imposing its regular sentence the court seemed to be saying that there was nothing unusual about the offense, else why did it give the presumed sentence? In the regular sentence, the court imposed one-half of the maximum period of parole ineligibility that could have been imposed, but in the extended sentence it imposed approximately two-thirds. Paradoxically, the court's statement of reasons for the two sentences is identical—word for word—except for the recital that the defendant was subjected to the Graves Act extender.

The point is simply that principled sentencing can accommodate a sentence for the type of offender who is before the court and the statutory requirements for a Graves Act extender—that the prior convictions be final—without creating a system of temporary sentencing. Defendant stood convicted of armed robberies before two courts. He had a long record of lawlessness. Even without the so-called temporary sentencing provisions invoked by this Court, the two trial courts could have imposed sentences "appropriate to the sentencing occasion." *Richardson v. Nickolopoulos,* 110 *N.J.* 241, 255, 540 *A.*2d 1246 (1988). For the first Graves Act offense, an armed robbery, defendant could have received twenty years with ten years of parole ineligibility. For the second Graves Act offense, he could have received twenty years with ten years of parole ineligibility for combined consecutive sentences of forty years with twenty years of parole ineligibility. In addition, because the defendant had been guilty of many prior offenses after the age of eighteen, he could have been sentenced as a persistent offender if he were not eligible for a Graves Act extender. Pursuant to the provisions of *N.J.S.A.* 2C:43–7, he could have been sentenced on either offense (or perhaps both) to a term of life

imprisonment with a maximum parole ineligibility term of twenty-five years. *N.J.S.A.* 2C:43–7a(2) and –7b. Two combined sentences could have kept defendant in prison for thirty-five years if principled sentencing so required. The fault for any lesser sentence lies not in the Code but in its administrators.

### III

There is another reason why we ought not start temporary sentencing. Finality in sentencing is an end in itself. *See State v. Ryan,* 86 *N.J.* 1, 10, 429 *A.*2d 332, *cert. denied,* 454 *U.S.* 880, 102 *S.Ct.* 363, 70 *L.Ed.*2d 190 (1981). This case is idiosyncratic. If disposition of the matters in the Appellate Division had been ordered differently, defendant would have been resentenced to the ordinary term.

There is no need to change the law to accommodate the chronology of events in this case. I suspect that most second Graves Act offenders who commit crimes with guns have long criminal histories that make them eligible for extended terms anyway. Defendant should probably have been sentenced as a persistent offender. The prosecution did not, however, seek to have Haliski sentenced as a persistent offender. Instead, the trial court gave him a sentence that was not authorized by law. Haliski's appeal did not wipe the slate clean as in *State v. Rodriguez,* 97 *N.J.* 263, 271, 478 *A.*2d 408 (1984) ("Since the underlying substantive convictions * * * were themselves the subject on an appeal in which defendant sought their modification, no legitimate expectation of finality could be invested in the underlying convictions or the sentences related to them."). The policy of *North Carolina v. Pearce,* 395 *U.S.* 711, 89 *S.Ct.* 2072, 23 *L.Ed.*2d 656 (1969), is that, ordinarily, subjecting an accused to the risk of harsher punishment as a condition of appealing a sentence imposed after trial violates principles of due process. That is, in effect, what happened here.

STEIN, J., joins in this opinion.

STEIN, Justice, dissenting.

I join Justice O'Hern's clear and compelling dissenting opinion, but the Court's extraordinary holding impels me to write separately.

The perceptive reader will understand that the Court has "amended" the Code of Criminal Justice (Code), *N.J.S.A.* 2C:1–1 to 98–4, to authorize a sentencing procedure nowhere to be found within the Code's carefully crafted provisions. The procedure adopted by the Court makes perfectly good sense, and is not likely to disturb the Legislature. The new procedure authorizes a trial court to sentence a defendant who is convicted of a second Graves Act offense, *N.J.S.A.* 2C:43–6c, to an extended term of imprisonment although the defendant's first Graves Act conviction is on appeal. The Court's new procedure, totally unauthorized by any provision of the Code, directs that the extended term be provisional only and is to be vacated if the prior Graves Act conviction is reversed on appeal. *Ante* at 18, 656 *A.*2d at 1255.

Apart from the institutional technicality that under our constitutional system "the judiciary does not pass laws," *State v. Cannon,* 128 *N.J.* 546, 560, 608 *A.*2d 341 (1992), the major impediment to the Court's newly authorized Graves Act sentencing procedure is that the Code expressly requires a different result. The Code authorizes an extended Graves Act sentence only for persons "previously convicted" of a Graves Act offense. From its inception, the Code, modeled after the Model Penal Code section 7.05, expressly has provided that "[a]n adjudication by a court of competent jurisdiction that the defendant committed a crime constitutes a prior conviction * * * *provided that the time to appeal has expired.*" *N.J.S.A.* 2C:44–4b (emphasis supplied). In *State v. Mangrella,* 214 *N.J.Super.* 437, 519 *A.*2d 926 (1986), *certif. denied,* 107 *N.J.* 127, 526 *A.*2d 194 (1987), the Appellate Division, applying the Code's plain language in the context of the provision authorizing extended sentences for persistent offenders, *N.J.S.A.* 2C:44–3a, held that the sentencing court may consider any conviction prior to sentencing "provided that there is no pending appeal

or right of direct appeal." *Id.* at 445, 519 *A.*2d 926. At oral argument, the Attorney General informed us that the State heretofore had taken for granted that the holding in *Mangrella* applied to Graves Act extended terms.

The majority seeks support for its newly devised sentencing procedure from the decisions of courts in other states that permit enhanced sentencing based on prior convictions pending on appeal. *Ante* at 12–13, 656 *A.*2d at 1251–1252. Those states, however, do not have statutory provisions similar to the Code that define a prior conviction as one no longer pending an appeal.

The Court ultimately relies on its view of "probable legislative intent" to sustain its newly crafted sentencing procedure. *Ante* at 16, 656 *A.*2d at 1253. If by "probable legislative intent" the Court implies that today's Legislature probably would prefer the Court's new sentencing procedure to the one mandated by the Code, the Court surely is correct: a sentencing procedure that compels imposition of an extended term on a defendant whose prior Graves Act offense is on appeal, subject to reduction only in the event of reversal, undoubtedly would be preferred to the Code's rule that excludes prior convictions from consideration until pending appeals have been concluded. The problem is that a different, but duly elected, Legislature—the one in office in 1978 when the Code was enacted (*L.* 1978, *c.* 95)—made a different policy choice, entirely reasonable when made, adopting the Model Penal Code's conception of enhanced sentencing that *prohibits* consideration of prior convictions still pending on appeal. The Legislature that passed the Graves Act in 1981, *L.* 1981, *c.* 31, only three years later, made no change to the Code's definition of prior conviction, apparently aware of and accepting the principle that only prior convictions no longer pending on appeal were eligible for consideration in imposing extended terms.

The Court's rewriting of the Code's carefully conceived sentencing scheme is deeply disturbing. If the Court is convinced that the Code's definition of "prior convictions" frustrates the intent of the Graves Act, it could use this case as a vehicle to flag the issue

for the Legislature's attention, as the Court has often done in the past. *See, e.g., Cannon, supra,* 128 *N.J.* at 573, 608 *A.*2d 341 (commending Intensive Supervision Program for legislative consideration); *State v. Styker,* 134 *N.J.* 254, 263–64, 633 *A.*2d 521 (1993) (Wilentz, C.J., concurring) (referring for legislative consideration sentencing standards for youthful offenders convicted of first- and second-degree offenses). Instead, disregarding the Code's clear language, plain meaning, and entirely plausible provisions concerning the use of prior convictions for sentencing enhancement, the Court usurps the legislative function and "construes" the Code to authorize an unauthorized sentencing procedure never enacted by any legislative body of this State. The Court's decision also produces the anomalous result that a prior conviction pending on appeal will be treated differently under the Graves Act than it will be for purposes of sentencing persistent offenders.

The Court's unconventional disposition of this appeal probably will not attract significant attention. The Court's ruling will prevent second-time Graves Act offenders from avoiding an enhanced sentence because their prior conviction is on appeal. However, the cost to the Court of the institutional compromise that occurs when it ignores basic legal principles to achieve a result more consistent with contemporary public policy, apparently acceptable to the majority, is heavy indeed. I have no doubt that in the long run the compromise is not worth the result achieved by the Court's extraordinary holding. As Justice O'Hern's opinion points out, a substantially equivalent sentence could have been imposed on defendant under the authority of the Code's existing provisions. *Ante* at 28–29, 656 *A.*2d at 1249. Moreover, the Legislature is waiting in the wings, and could have acted had the Court but stayed its hand.

I would reverse the Appellate Division's judgment and hold that defendant is ineligible for a Graves Act extended sentence.

O'HERN, J., joins in this opinion.